In the Matter of DARLAND COMPANY, Inc., Bankrupt.

No. 4–394.

United States District Court
S. D. Iowa, W. D.
June 20, 1960.

Harold T. Beckman, Council Bluffs, Iowa, for petitioning creditors.

John Neiman, Des Moines, Iowa, for certain creditors.

Russell Wilson, Des Moines, Iowa, for Hawkeye Machinery Co.

VAN PELT, District Judge.

This matter is before the Court upon a Petition filed by certain unsecured creditors who object to the election at the first meeting of creditors and appointment by the Referee on May 9, 1960 of the Honorable Roy W. Meadows as Trustee for the Bankrupt.

The counting of votes at the election of the Trustee is the main point presented on review. At the outset I desire to point out that the ability, integrity or impartiality of Mr. Meadows is not at issue. Judge Roy L. Stephenson's confidence in him is reflected by the fact that as his first official act on June 9 after taking the oath as a Judge of this court, he appointed Roy W. Meadows as Acting United States Attorney. During my lengthy sojourn in the Southern District I have become well acquainted with Mr. Meadows and approve the confidence Judge Stephenson has reposed in him.

To a limited degree it could be said that the questions involved in the election have become moot in that Mr. Meadows since his appointment as United States Attorney, has filed his resignation. If, however, claims were voted which should not have been voted on his behalf and if by reason thereof the creditors actually elected another person the matter is not moot. It should be observed that Mr. Meadows was not present when the election was held. The Court's views hereafter expressed of the election in no manner reflect upon Mr. Meadows.

Proceedings before the Referee show that two persons were nominated at the creditors' meeting above mentioned. Mr. Meadows received the votes of 39 creditors holding claims totalling $45,-587 and Mr. Budd, whom the Court when the involuntary bankruptcy petition was filed, appointed as receiver, received the votes of sixteen or eighteen creditors totalling $35,000 plus, according to the oral announcement of the Referee as shown in the transcript of the evidence. The Des Moines Attorney who is secretary-treasurer of the Iowa Unit of the National Association of Credit Men and to whom on March 11, 1960 the Bankrupt had made a general assignment for the benefit of creditors, voted 33 claims totalling $15,317.57, according to an adding machine tape that appears attached to the Petition for Review. The minutes of the first meeting signed by the Referee, show that he voted claims totalling $21,048.31. The same minutes show the total of the claims voted for Mr. Budd amount to $36,075.12 and for Mr. Meadows to $49,667.60. While the figures do not agree as to the number or amount of claims voted, it is clear on either computation that if the claims voted by the attorney-secretary-treasurer of the credit bureau are subtracted, the claims voted for Mr. Budd are greater in dollar amount than the claims voted for Mr. Meadows.

It appears from the record that it is the practice in the District in expediting hearings, to permit counsel to state the number of claims represented and the amount without the filing of properly signed and sworn claims as required by the Bankruptcy Act, § 57, 11 U.S.C.A. § 93.

Without intending to reflect adversely on the excellent administration by a part-time Referee in Bankruptcy in a District with a volume of bankruptcy matters that in the opinion of this Judge would justify a full-time Referee, the Court by its ruling here does not intend to express approval of this practice. It is not assigned as an error, and hence will not be further commented on.

The question the answer to which is determinative of this Petition for Review can be stated as follows: Should claims voted by the secretary-treasurer of a credit bureau, who is an attorney, some or all of which have been solicited by letters written on letterheads of the Credit Bureau, signed by the attorney in this case with the word "Trustee" following his name and mailed to creditors who were not up to that time his clients, and to whom prior to the time of the filing of the involuntary bankruptcy petition the Bankrupt had assigned his assets for the benefit of creditors, be counted over objection, in determining the election of a Trustee? The charge is made that as assignee he sold assets to Bankrupt's present employer and Bankrupt's relatives for less than their real value. The Court is not passing on that charge and notes that the lawyer is a respected lawyer in the District. It is of necessity true that the assignee is going to have to account to the person appointed as Trustee for the handling of the Bankrupt's property under the assignment. His right, if any, to control the selection of the Trustee is thus of importance, regardless of the integrity of the man for whom he voted.

Creditors who have petitioned for review place reliance on In re Stowe, D.C., 235 F. 463, 464, a 1916 Tax Court decision from the Northern District of California, in which it is stated:

"Neither the bankrupt himself, nor his attorney, nor an assignee, nor his attorney, can be permitted to control the selection of a trustee. If creditors knowingly join with the bankrupt or his attorney, or with an assignee or his attorney, in an effort to do what it has repeatedly been decided they may not do, the simplest and most obvious way to defeat their purpose is to reject their selection of trustee, and permit the creditors who are not in the combination to make the selection." At page 464.

Judge Bourquin of Montana, had the problem before him many years ago in a matter involving the Billings Credit Men's Association, and stated:

"The order is that the Billings Credit Men's Association is removed from the office of trustee of the bankrupt's estate, and that the referee proceed to a new election or appointment to that office. Therein the referee will be diligent to the end that the assignees, association, and counsel do not control the election. See Wilson v. Ass'n, 232 Fed. 824, 147 C.C.A. 18; In re Stowe, 235 Fed. 463; In re Kellar, 192 Fed. 830, 113 C.C.A. 154." In re Judith Gap Commercial Co., D.C., 291 F. 792, 797.

Chief Judge Clark, of the United States Court of Appeals for the Second Circuit, recognized the validity of the Stowe rule in the case of Schwartz v. Mills, 192 F.2d 727, 29 A.L.R.2d 1161, saying:

"Since a trustee should not owe his election to those whom he must sue for restoration of the bankrupt's estate, In re Stowe, D.C.N.D.Cal., 235 F. 463; * * *" At page 730,

although the court did not reverse the referee's order.

District Judge Sanborn, later a Circuit Judge of this Circuit, reversed the appointment of a trustee secured through the bankrupt's efforts, and said:

"In no case should the appointment of a trustee ever be approved, regardless of who he is, when it appears that his selection has been, directly or indirectly, brought about by the bankrupt himself or those acting in his behalf." In re Bloomberg, D.C., 48 F.2d 635, at page 637.

More recently the United States Court of Appeals for the Ninth Circuit, has given consideration to the general matters that are involved herein in a case in which the bankrupt had made a general assignment of his assets to the Board of Trade of San Francisco for the benefit of his creditors and thereafter claims were solicited by a creditors' committee in the Board of Trade using the letterhead of

the Board. The referee refused to permit the claims so solicited to be voted and the District Judge reversed the referee. The Circuit Court reversed the District Judge and affirmed the order of the referee. There was no contention that the person for whom the Board of Trade had cast their votes did not administer the estate other than impartially, fairly and accurately. The court, however, stated: "It must be remembered that the assignee of the bankrupt was also the secretary of the Board," and referring to Judge Sanborn's opinion above mentioned, stated:

"Although the facts in that case were different from those at bar, the decision does bear upon the point that, in a trustee in bankruptcy, mere honesty is not enough. The influences back of his appointment are also important." Lines v. Falstaff Brewing Co., 9 Cir., 233 F.2d 927, at page 934.

The court stated that it was not at all impossible that there might develop a controversy over the bankrupt's business assets in the hands of the Board and that in disqualifying the Board-sponsored creditors, the referee exercised sound discretion. Here it is evident there will be controversy over the assignee's handling and sale of assets.

This Court concludes that it is sound policy to adopt the rule of the Stowe case and to say that the assignee of the bankrupt should not be permitted to vote the claims voted by him at the creditors' meeting. Without those claims Mr. Budd would have been elected. The Court therefore holds that John Budd was the duly elected Trustee in Bankruptcy at the creditors' meeting held on May 9, 1960. While the Court holds John Budd the duly elected Trustee it will give full effect to action taken or disbursements made by Mr. Meadows under the purported appointment as Trustee from the date of appointment until the date of this order.

The Court's policy and decision herein finds approval beyond that of the cited cases. The question of solicitation of claims in bankruptcy proceedings has often bothered the courts. It is contended in this case by the attorney for the credit bureau that the solicitation of powers of attorney is not prohibited. The only cited case is In re Mayflower Hat Co., 2 Cir., 65 F.2d 330, 331. A reading of the case shows that the executive secretary of the association, who solicited the claims for filing and on each of which there was a power of attorney authorizing the attorney to vote the claim for the election of a trustee, was not an attorney. In the opinion in the Mayflower case, it is said:

"As Hirsch is not an attorney at law, he is not forbidden to solicit claims for collection either in bankruptcy or otherwise."

Thus the Mayflower case is to be distinguished from the facts before this Court. Here the solicitation is by an attorney who is the secretary-treasurer of the Iowa Unit, of National Association of Credit Men. This Court does not believe an attorney has a right to solicit claims or powers of attorney for voting in bankruptcy proceedings of creditors who are not already his clients.

The Southern and the Eastern Districts of New York have felt it necessary to amend their bankruptcy rules to provide for inquiry by the referee as to the solicitation of proxies and to provide for the filing of an affidavit by an attorney who desires to vote more than one claim. The attorney among other things in the affidavit must state whether any of the claims which he desires to vote, other than those of his regular clients, have been solicited and if so by whom. In the notes relating to the adoption of the rule it is stated:

"Although solicitation of itself is not deemed unlawful (In re Mayflower Hat Co. Inc [2 Cir.,] 65 F.2d 330) when engaged in by a layman, it is, of course, unlawful when done by, for, or on behalf of a lawyer. It is therefore deemed advisable to amend subdivision (c) of the former rule by requiring an attorney at law as well as a creditor to

file an affidavit making a full disclosure as to the solicitation of claims.

"Subdivision (d) in the above rule provides in addition to the existing matters that 'if it appears that any claim, power of attorney or proxy has been solicited, and such claim is being voted at any meeting of creditors by an attorney at law, the referee shall not allow the voting of such claim under such power of attorney or proxy.'"

This Court is in accord with the views expressed that the solicitation is unlawful when done by an attorney and on that ground, in addition to the fact that the attorney was assignee of the bankrupt, holds the voting of the claims improper.

Whether the solicitation of claims or proxies is a violation of Canon 27 is not before the Court. A reading of Opinion 225 of the Standing Committee of Professional Ethics of the American Bar Association, dated July 12, 1941, strengthens this Court's viewpoint that the practice is to be restrained rather than encouraged.

It is the Court's hope that this decision will be appealed so that we can have a ruling within this Circuit on a matter that is embarrassing to some lawyers in the Southern District of Iowa, who think the practice is improper but dislike to raise it as it is here raised. This Court has gone into the matter in this detail so that it will not again plague the bankruptcy administration in or the newly appointed Judge of this District and can by an appeal in this case be decided once and for all in this Circuit.

I can reach no other conclusion than that claims voted by a lawyer who is the secretary-treasurer of a Credit Bureau, who is assignee of the Bankrupt's assets who must make an accounting to the person selected as Trustee and has as Trustee under the assignment solicited the claims and powers of attorney attached by letters addressed to creditors as shown by Exhibit 1, should not be counted in determining who has been elected as Trustee. It follows that Mr. Meadows' resignation should be accepted; that the Referee's action appointing Mr. Meadows should be vacated; and Mr. John Budd declared the duly elected Trustee. It will be so ordered.