In the Matter of Georgia Homola
KUCHAREK, Debtor.

John L. CASTELLANI,
Trustee, Plaintiff,

v.

Donald C. KOHNE, Defendant.

Bankruptcy No. 84–02968.
Adv. No. 84–0479.

United States Bankruptcy Court,
E.D. Wisconsin.

Oct. 30, 1987.

Louis R. Jones, Jones and Feldner, Milwaukee, Wis., for trustee/plaintiff.

Thomas G.A. Herz, Michael, Best & Friedrich, Milwaukee, Wis., for defendant.

## MEMORANDUM DECISION

C.N. CLEVERT, Chief Judge.

In this case the trustee in bankruptcy is attempting to set aside a pre bankruptcy real estate conveyance by the debtor pursuant to 11 U.S.C. §§ 547 and 548. He is also seeking a determination, pursuant to 11 U.S.C. § 544(a)(3), that he has superior rights as a bona fide purchaser of another parcel of real estate in Green Lake County, Wisconsin, for which the unrecorded warranty deed identifying the debtor as grantee, remains in the defendant's possession. The trustee contends that granting Donald Kohne a mortgage on debtor's Whitefish Bay, Wisconsin, homestead, approximately six months prior to bankruptcy, was an insider preference recoverable under 11 U.S.C. § 547(b)(4)(B) as well as a fraudulent transfer made with intent to hinder, delay and defraud creditors contrary to § 548(a)(1).

With respect to the real estate located in Green Lake County, Wisconsin,[1] the trustee contends that § 544(a)(1) entitles him to a declaratory judgment that he holds the

---

1. Lot Seventeen (17) in the Plat of Robinhood Estates 1st Addition, as recorded in the Office of the Register of Deeds for Green Lake County, Wisconsin on October 15, 1973 in Volume 6 of Plats at Page 30 as Document No. 201284; Together with an undivided 1/15 interest in Outlot One (1) in the Plat of Robinhood Estates, as recorded in said Register's Office on December 15, 1972 in Volume 6 of Plats at Pages 26–26A as Document No. 198844; being a part of Government Lots One (1) and Two (2) of Section Twenty-nine (29) Township Sixteen (16) North, Range Thirteen (13) East, Town of Brooklyn, Green Lake County, Wisconsin.

property free and clear of any right, interest or equitable lien claimed by Kohne. Kohne makes these claims as a result of his having paid all taxes and made all land contract payments.

The preference dispute,[2] focuses on whether Kohne is an insider within the meaning of § 547(b)(4)(B) and whether Kucharek was insolvent when the mortgage was given. The parties agree that Kucharek gave Kohne a mortgage on her Whitefish Bay, Wisconsin, homestead; that Kohne benefitted from the transfer;[3] that the transfer was on account of an antecedent debt; that the transfer occurred more than ninety days but less than one year before the filing of Kucharek's bankruptcy petition; and, that Kohne was enabled to receive more than he would otherwise be entitled to had the transfer not been made.

The definition of insider is found in 11 U.S.C. § 101(30)[4] which states in part:

(30) "insider" includes—

(A) if the debtor is an individual—

(i) relative of the debtor or of a general partner of the debtor;

(ii) partnership in which the debtor is a general partner;

(iii) general partner of the debtor; or

(iv) corporation of which the debtor is a director, officer, or person in control. . . .

The legislative history for this section states that: "an insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6269. The Bankruptcy Code rule of construction set forth in § 102(3) provides also that the term "includes" which is used in defining "insider" is not limiting. Considering this along with developing case law, *Hunter v. Babcock (In re Babcock Dairy Co. of Ohio, Inc.)*, 70 B.R. 657, 15 Bankr. Ct.Dec. 1004 (Bankr.W.D.Ohio 1986); the *Kepler v. Lemanski (In re Lemanski)*, 56 B.R. 981 (Bankr.W.D.Wis.1986); *Jackson Purchase Production Credit Association v. Taylor (In re Taylor)*, 29 B.R. 5 (Bankr. W.D.Ky.1983); *In re Montanino*, 15 B.R. 307 (Bankr.D. New Jersey 1981) leaves little doubt that an insider may be a person or entity other than those enumerated in § 101(30), provided their relationship with the debtor fits within the meaning of the statute.

Having determined that a close relationship between a debtor and a transferee may support a finding that the transferee is an insider, I now must examine Kohne's relationship with Kucharek and the facts surrounding the giving of the mortgage to determine whether or not Kohne was an insider. The evidence before me firmly establishes that the debtor and Kohne have been very close friends since 1967 and that Kohne has involved himself in the debtor's financial affairs since as early as 1968.

---

**2.** To recover a preferential transfer under § 547(b) of the Code, the trustee must establish the

transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title. 11 U.S.C. § 547(b).

**3.** § 101(50).

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

**4.** This section was originally numbered 11 U.S.C. § 101(25).

Kohne and Kucharek met while they were employed by Huebsch Manufacturing and Kohne has visited Kucharek's home at least two or three times a month for more than fifteen years. Kohne is single with no dependents and Kucharek is divorced. During some of his visits to Kucharek's home, Kohne would do yard work and general maintenance.[5] Other times Kohne would discuss Kucharek's personal problems, such as roof leaks and ill health.

In 1968 Kohne learned that Kucharek did not have any savings or investments and that she was solely supported by her wages. At that time Kucharek was raising two sons and was concerned that she might have to sell her home and go on welfare in order to pay her ex-husband for his interest in the home. Kohne, therefore, loaned Kucharek $4,600 from his life insurance to make the payment.

Between 1968 and 1983 there were dozens of other loans from Kohne for which Kucharek never signed a promissory note or made a payment. Nonetheless, Kucharek did state that she intended to repay Kohne when she sold her home. Over the years Kohne developed a good relationship with Kucharek's parents. He entertained them when they visited Wisconsin and they invited him to visit them in New York.

In 1978 Kohne informed Kucharek's elderly mother, Stephie Homola, that he had found a piece of property in Green Lake, Wisconsin, that he wanted to buy. Homola then agreed to Kohne's request for a $5,000 loan. Next, on July 29, 1978, Kohne and Kucharek, as tenants in common, signed an offer to purchase the property known as Belle Mapps Court, Lot 17 of Robinhood Estates (1st Addition), on land contract for $27,000, with a $6,750 down payment. The offer to purchase was to be mailed to Kucharek's Whitefish Bay home, if accepted. This was apparently done because on October 12, 1978, Kucharek and

Robinhood Estates, Inc., executed a five year land contract for purchase and sale of the property.[6]

According to Kucharek the land contract was in her name because her mother didn't have any proof that Kohne owed her $5,000. Kohne added that he travelled a lot and that placing Kucharek's name on the land contract would protect her mother's loan in the event of his death. Moreover, he indicated that it was his intention to give the Green Lake property to Kucharek upon his death.

A warranty deed for the Green Lake property was issued on April 10, 1984, naming Kucharek as grantee. But the deed was not recorded because Kohne stated that he wanted a law suit against Kucharek resolved beforehand.

The law suit arose from an automobile accident in June of 1982. Kucharek told Kohne what happened and that she didn't have any liability insurance. Afterward, she hired Attorney Miriam Eisenberg to represent her in the suit by Robert Weiss, the other party involved in the accident. However, Eisenberg subsequently advised Kohne that Weiss would not settle the suit; that the case would go to trial; and that she was unable to continue handling the case because she was not a trial lawyer. Kucharek then sought other counsel.

Due to Kohne's concern that Kucharek might have to declare bankruptcy as a result of the accident, his knowledge that Kucharek's only income was social security disability benefits which would not be enough to pay Weiss [7] and the lack of documentation, other than cancelled checks, to substantiate his loans, Kohne went to Eisenberg and asked what he could do to protect himself. Eisenberg suggested a note and mortgage. Attorney Louis B. Aderman of Eisenberg's office later drafted the documents and on January 5, 1984, Eisenberg acknowledged Kucharek's signa-

---

**5.** Kohne testified that he lives in a rented trailer and that he doesn't own any real estate. He said that he doesn't have a will and that Kucharek is the beneficiary of his life insurance.

**6.** Close examination of the document reveals that Kohne's name followed by the word "and"

were whited out on the contract identifying the purchaser as Kucharek.

**7.** Kucharek was unable to work and was on total disability.

ture on the $32,970 mortgage. From that date until the petition was filed on July 27, 1984, Kucharek did not make any payments on the mortgage note.

Although Kohne and Kucharek deny any romantic involvement, the evidence poignantly reveals a deep, intimate caring relationship. These exceptionally close friends trusted one another so completely that there was no need for formality and legal documents except when it appeared that Kucharek might be liable for damages arising from her accident with Robert Weiss. These factors compel that I find the defendant, Donald Kohne, is an insider within the meaning of § 547(b)(4)(B).

■ The next matter for consideration is whether Kucharek was insolvent when she gave Kohne the mortgage on her home. Section 101(31)[8] of the Code states that:

(31) "insolvent" means—

(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title....

Insolvency is a factual issue which must be resolved on a case by case basis. *Join–In International (U.S.A.) Limited v. New York Wholesale Distributors Corp., (In re Join–In International (U.S.A.) Ltd.)*, 56 B.R. 555, 560 (Bankr.S.D.N.Y.1986). And in resolving that question doubtful or contingent claims may be fixed at less than face value. *Id.*

A review of the schedules filed in this case discloses that Kucharek's assets total $64,510, that her exemptions total $26,950, and that her liquidated and noncontingent debts are $35,849.16. Of the six unliquidated or contingent debt claimants only one has filed a proof of claim, that being Robert A. Weiss for the accident in the amount of $800,000.

The debtor testified that the assets and liabilities which existed on the petition date are the same as those that existed on the date the mortgage was given. To determine Kucharek's insolvency, her exempt assets must be deducted from the total assets. § 101(31)(A)(ii). This is $37,560, or only $1,710.84 more than the liquidated and noncontingent debts. If this were the end of the calculation a finding that Kucharek was not insolvent would be required. However, as stated above the court may value contingent claims at less than face value, accordingly, we look to Weiss's $800,000 claim. Here it should be noted that Kucharek's engagement of an attorney to negotiate a settlement with Weiss makes it apparent that she placed some value on the claim and that there was some liability for the accident. Considering Weiss's claim then, and even discounting the face amount by greater than 99%, Kucharek would be insolvent when the petition was filed and when the mortgage was granted. Therefore, it must be held that the trustee may avoid, as a preference under § 547(b), the granting, by Kucharek, of the mortgage on her Whitefish Bay, Wisconsin, homestead to the defendant, Donald Kohne.

■ The trustee also contends that giving the mortgage to Kohne was a fraudulent transfer under 11 U.S.C. § 548.[9] Since

---

**8.** This section was originally numbered 11 U.S.C. § 101(26).

**9.** That section states in part:
(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
(1) made such transfer or incurred such obligation with actual intent to hinder, delay,

or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; ...

I have determined that Kucharek was insolvent, it only remains to be decided whether there was actual intent on her part, to hinder, delay or defraud a creditor.

Considering the timing of the transfer, there is no doubt that Kohne asked Kucharek to give him the mortgage because of the fear that Weiss would win his suit and secure a judgment lien on the home. Evidence showed that Kohne was told that Weiss refused to settled his suit against Kucharek; that Kohne believed that Kucharek might have to file bankruptcy; that Kohne went to Kucharek's attorney for advice on how to protect himself in light of Weiss's suit; and that the attorney suggested the note and mortgage. These combined factors firmly establish that Kohne and Kucharek intended to hinder, delay and defraud Weiss and other creditors. Accordingly, the conclusion must be that the requisite intent was present and the trustee may avoid the granting of the mortgage as a fraudulent transfer under § 548.

Section 544 of the Code states in part that:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

■ Hence the trustee claims an interest in the Green Lake property superior to any claimed by Kohne. Kohne, seems to counter on three grounds. First, he maintains entitlement to a "resulting trust" because his money was used to purchase the property and pay property taxes. However, he fails to realize that § 701.04(1) Wis.Stat. effectively abolishes purchase money resulting trusts.[10]

■ Second, he asserts that a "constructive trust" should be imposed to prevent unjust enrichment of the debtor. However, the defendant fails to realize that this equitable remedy is not available to him in this case. The Honorable Robert D. Martin, Bankruptcy Judge for the Western District of Wisconsin, has recently reviewed Wisconsin's constructive trust doctrine. Judge Martin in *Mumm v. Adametz (In re Joseph B. Adametz)*, 53 B.R. 299 (Bankr. W.D.Wis.1985) summarizes Wisconsin's trust doctrine as follows: "[t]o invoke a constructive trust unjust enrichment and some additional factor such as actual or constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong or some form of unconscionable conduct must be found." *Id.* at 305, citing, *Wilharms v. Wilharms*, 93 Wis.2d 671, 679, 287 N.W.2d 779, 783 (1980); *Prince v. Bryant*, 87 Wis.2d 662, 275 N.W.2d 676 (1979); *Gorski v. Gorski*, 82 Wis.2d 248, 262 N.W.2d 120 (1978); *Meyer v. Ludwig*, 65 Wis.2d 280, 222 N.W.2d 679 (1974). Assuming unjust enrichment exists, no such "additional factor" has been shown in this case.

The evidence, as stated above, shows no traces of fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong or some form of unconscionable conduct on the part of Kucharek or any third party. Without such a showing, a constructive trust cannot be imposed in this case.

■ The third argument is based on Kohne's receipt and possession of the warranty deed for the Green Lake property. Kohne contends that the conveyance of the property to Kucharek was ineffective because the deed was not delivered to her. *See*, Wisconsin Statute §§ 706.01, 706.02(1)(g); *Kepler v. Lemanski (In re Lemanski)*, supra. However, "[d]elivery of a

---

**10.** 701.04 Purchase money resulting trusts abolished. (1) If title to property is transferred to one person and all or part of the purchase price is furnished by another, the latter may not enforce a purchase money resulting trust.

conveyance may be made to a third party acting on behalf of the grantee, and as long as the conveyance is transferred out of the grantors control, the delivery is valid, even if ultimate conveyance to the grantee depends on a future contingency." *Kepler v. Lemanski (In re Lemanski),* supra. at 987 citing *Prosser v. Nickolay,* 249 Wis. 75, 77, 23 N.W.2d 403 (1946). "Whether or not a conveyance delivered to a third party is effective to transfer an interest in real estate to the grantee is primarily a question of fact to be determined from all the circumstances of the transaction." *Kepler v. Lemanski (In re Lemanski),* supra. at 987 citing *Hamblyn v. Crase,* 194 Wis. 628, 630–31, 217 N.W. 311 (1928); *Kittoe v. Willey,* 121 Wis. 548, 550, 99 N.W. 337 (1904); *Chaudoir v. Witt,* 170 Wis. 556, 174 N.W. 925 (1920); *Erbach v. Brauer,* 188 Wis. 312, 318, 206 N.W. 62 (1925).

In view of the foregoing discussion, it is the decision of this court that the delivery of the deed to Kohne was sufficient to transfer the interest in the Green Lake Property to Kucharek. Therefore, the Green Lake Property is property of the estate under 11 U.S.C. § 541 and the trustee takes the property free and clear of any right, interest or equitable lien claimed by the defendant, Donald Kohne.