In re Allison B. POAGE, Debtor.

Bankruptcy No. 388–31042–SAF–7.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

June 3, 1988.

Kenneth Stohner, Dallas, Tex., for debtor, Poage.

Mel Cyrak, Richardson, Tex., for Interim Trustee.

J. Michael Sutherland, Dallas, Tex., for Merrill Lynch Private Capital.

## ORDER

STEVEN A. FELSENTHAL,
Bankruptcy Judge.

On April 25, 1988, the court held a hearing on Merrill Lynch Private Capital, Inc.'s ("Merrill Lynch") motion to confirm the election of Daniel C. Stewart as permanent trustee. The interim trustee contends that the motion should be denied because Merrill Lynch was the only creditor that voted and it should not have been allowed to vote. The court took the motion under advisement to enable the parties to file briefs. The court now concludes that Merrill Lynch's motion should be granted. Although written in narrative form, this memorandum opinion and order contains the court's findings of fact and conclusions of law required by Bankruptcy Rules 7052 and 9014.

## FACTS:

The debtor Allison B. Poage ("Poage") is the beneficiary of four spendthrift trusts established by her parents in 1978. Between 1981 and 1987 Poage received approximately $11,000,000 from the trusts. First RepublicBank of Dallas is the trustee of all four trusts. In December 1978 Poage married James R. Poage. James Poage filed a petition for divorce in April 1987. During the marriage, James Poage controlled Poage's businesses and investments.

Between January 25, 1983, and November 8, 1985, Merrill Lynch made several loans to the Poages. On November 8 these loans were consolidated and extended when the Poages executed a promissory note for $7,000,000. In her response to Merrill Lynch's motion to confirm Stewart's election, Poage states that her husband had negotiated the loans with Merrill Lynch and that her involvement was limited to signing the promissory note at her husband's request. Poage contends that she was not informed of the reasons for the loans or that her separate property would be used to repay the loans.

In March 1984 James Poage, along with several other investors, purchased ownership interests in 800–Flowers, a floral telemarketing firm. He purchased 2.5 units of the total 23 units for $1,125,000. On September 10, 1985, Merrill Lynch, which had advanced funds to 800–Flwers, foreclosed on a $3,208,500 promissory note executed by 800–Flowers. ATC, a subsidiary of 800–Flowers, purchased the collateral for the amount of the note. Merrill Lynch required James Poage to execute a new note guaranteed by a line of credit issued by Merrill Lynch. ATC owes Merrill Lynch approximately $1,800,000. ATC also owes James Poage approximately $975,000. The interim trustee contends that James Poage's claim against ATC is an asset of this estate.

Poage filed a Chapter 7 petition in February 1988. Mel Cyrak was appointed the interim trustee. On April 5, 1988, Merrill Lynch filed a proof of claim in which Merrill Lynch contends that Poage owed it

$7,077,461.80 on the date the petition was filed. Poage has scheduled $7,524,537 in unsecured claims. She listed all these claims as disputed. At the April 6, 1988, meeting of creditors, Merrill Lynch requested an election of a permanent trustee. James Poage and Bright Banc Savings Association, who are also creditors, were represented by counsel at the meeting. Merrill Lynch, the only creditor that voted, voted to elect Daniel C. Stewart as trustee. Cyrak made an oral objection to Merrill Lynch's claim at the § 341 meeting. The United States Trustee filed a report of disputed election, and Merrill Lynch filed its motion to confirm the election within the 10–day time limit provided by Bankruptcy Rules 2003(d) and X–1006(c).

Prior to the hearing on Merrill Lynch's motion to confirm the election, Cyrak filed a written objection to Merrill Lynch's claim. Cyrak contends that Merrill Lynch's claim should be denied because Merrill Lynch (1) has presented insufficient documentation to substantiate the validity or amount of its claim; (2) has an insider relationship with James Poage; (3) did not require Poage to get independent advice about the loan transactions; (4) did not require Poage to submit financial statements; and (5) only met with Poage in social settings. He also filed a response to Merrill Lynch's motion to confirm the election in which he contends that the election should not be confirmed because (1) one creditor should not be allowed to elect a permanent trustee; (2) Merrill Lynch's claim is disputed, unliquidated, and insufficient on its face; (3) Merrill Lynch may hold an interest that is materially adverse to the other creditors; (4) Merrill Lynch may be an insider; and (5) the election was procedurally defective since Merrill Lynch did not attempt to determine whether there were more creditors, did not request an election in writing, and did not give notice to the interim trustee that an election would be requested. No evidence was offered at the April 25 hearing.

Poage does not object to the election. She does state, however, that substantial issues exist as to the validity of Merrill Lynch's claim. Specifically, Poage states

that she "believes issues exist regarding the potential avoidability of the Merrill Lynch claim and potential counterclaims against Merrill Lynch predicated on its involvement with James Poage and the use and subjection to liability of [her] separate property." She contends that these issues should not be overlooked in acting on Cyrak's objections to Merrill Lynch's claim for voting purposes.

## DISCUSSION:

"Bankruptcy is basically a procedural forum designed to provide a collective proceeding for the sorting out of nonbankruptcy entitlements." *In re McClain Airlines, Inc.*, 80 B.R. 175, 179 (Bankr.D. Ariz.1987), citing *Rosner v. Worcester (In re Worcester)*, 811 F.2d 1224, 1228 (9th Cir.1987). Chapter 7, which contains the Code's liquidation provisions, is designed to alleviate the inequities and inefficiencies of state "grab law" by requiring similarly situated unsecured creditors to share the debtor's nonexempt property equally. *See* T. Jackson, *The Logic and Limits of Bankruptcy Law*, p. 8–19 (1986); M. Bienenstock, *Bankruptcy Reorganizations*, p. 1 (PLI 1987). Chapter 7 is also based on the premise that the property of the debtor's estate is held in trust for the creditors and, therefore, the creditors should be permitted to supervise the collection and liquidation of the debtor's estate. Congress determined, however, that a Chapter 7 estate could be administered most economically and efficiently by an independent trustee. Although a Chapter 7 trustee is a fiduciary obligated to treat all parties fairly, his primary duty is to the estate's unsecured creditors. *Fox v. Anderson (In re Thu Viet Dinh)*, 80 B.R. 819, 822 (Bankr.S.D. Miss.1987). To ensure that a Chapter 7 case remains a creditor-controlled proceeding, the Code permits unsecured creditors to vote for a permanent trustee. An interim trustee is appointed by the United States Trustee upon the filing of the petition to expedite matters until the § 341 meeting, at which the unsecured creditors can request an election for a permanent trustee.

■ An unsecured creditor may vote for a trustee only if (1) he holds an "allowable, undisputed, fixed, liquidated, unsecured claim;" (2) he does not have an interest materially adverse to the other creditors; and (3) he is not an insider. 11 U.S.C. § 702(a). Bankruptcy Rule 2003(b)(3) permits an unsecured creditor who has filed a proof of claim to vote unless an objection is made to the claim or the claim is insufficient on its face.[1] Because Congress intended for the bankruptcy rules to permit a bankruptcy court to allow a claim temporarily for voting purposes, Rule 2003(b)(3) permits a bankruptcy court to allow the claim for voting purposes even if an objection is filed.

■ Initially, an issue exists as to whether an interim trustee has standing to object to the election of a permanent trustee. Two cases have been found that address this issue and they reach opposite conclusions. The court in *In re G.I.C. Government Securities, Inc.,* 56 B.R. 105, 108 (Bankr. M.D. Fla.1985), held that an interim trustee does not have standing to challenge a creditor's right to hold an election. The bankruptcy court in *In re Metro Shippers, Inc.,* 63 B.R. 593, 598 (Bankr. E.D. Pa. 1986), held that an interim trustee has standing because he "has ostensibly lost the opportunity to administer [the case] and with it the possibility to earn commissions. Due process would seem to require that he has standing to challenge any defects in the process by which these rights were lost." This court concludes that the interim trustee has standing in the present case to raise his objections but for different reasons.

Section 702(a) of the Code and Bankruptcy Rule 2003(b)(3) govern the election of a permanent Chapter 7 trustee. They do not state who has standing to object. The Advisory Committee notes to Rule 2003 state that the court should promptly resolve election disputes "when an interested party presents the dispute to the court." A

trustee is a party in interest under § 502(a) entitled to object to claims for purposes of final allowance and distribution. *See Lawrence v. Steinford Holding B.V. (In re Dominelli),* 820 F.2d 313, 316 (9th Cir. 1987). An interim trustee is the optimal party to object to a creditor's claim for voting purposes since he is the representative of the estate, 4 *Collier on Bankruptcy* § 701.04 (15th ed. 1987), and the purpose behind the § 702 voting restrictions is to protect the bankruptcy estate. *In re Kam Kuo Seafood Corp.,* 42 B.R. 558, 560 (Bankr. S.D.N.Y.1984). Cyrak has standing to raise his objections to the election.

■ Cyrak contends that since § 702 states that "creditors" may elect a permanent trustee, Congress did not intend for only one creditor to be able to elect a permanent trustee. An election for a permanent trustee may be held only if it is requested by creditors who qualify under § 702(a) and who hold 20 percent in amount of the claims that are entitled to vote under § 702(a). A candidate becomes the permanent trustee if he receives a majority in amount of the votes cast, provided that 20 percent in amount of the eligible claims are voted. These eligibility requirements are in response to what Congress perceived where abuses under the Act. Creditors had shown a lack of interest in participating in bankruptcy cases under the Act because distributions to unsecured creditors were often minimal. Congress noted that due to this lack of creditor interest, the system of electing trustees was being controlled by creditors' attorneys who sought to merely benefit themselves. *See In re Tartan Construction Co.,* 4 B.R. 655, 657–58 (Bank.D.Neb.1980). Section 702 was enacted to curb this abuse. " 'The minimum percentage request requirement is designed to insure that a trustee is elected only in cases in which there is true creditor interest, and to discourage election of a trustee by attorneys for creditors.' " *Tartan Construction,* 4 B.R. at 657 (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess.

---

**1.** Cyrak contends that Merrill Lynch's claim is insufficient because it is not supported by sufficient documentation. Merrill Lynch's claim is based on a promissory note executed by Poage.

Its proof of claim is sufficient since a copy of the promissory note, which is signed by Poage, is attached to the proof of claim.

102 (1977), U.S. Code Cong. & Admin. News 5787, 6063 (1978)). Section 702 states that a candidate is elected if 20 percent in amount of the eligible claims vote and the candidate receives a majority in amount of the eligible votes. "Voting is done by the amount of the claim, not by heads." *In re Baton Rouge Marine Repair & Drydock, Inc.,* 57 B.R. 19, 22 (Bankr.M.D.La.1985). No significance should be read into the use of the term creditors instead of the term creditor. This conclusion is supported by two noted treatises. Cowans, *Bankruptcy Law and Practice* § 2.4, 70–71 (1986); 4 *Collier on Bankruptcy* § 702.03 at 702–15 (15th ed. 1988). The election is not invalid merely because Merrill Lynch was the only creditor that voted.

■ Cyrak alleges that Merrill Lynch's claim should be disallowed for voting purposes because it did not attempt to determine whether additional creditors exist that were not scheduled by the debtor and that this investigation may have revealed additional creditors. He contends that if additional creditors are scheduled, Merrill Lynch may not satisfy the minimum percentage requirement. He relies on *In re Blanchard Management Corp.,* 10 B.R. 186 (Bankr.S.D.N.Y.1981), to support his argument. In *Blanchard,* the court refused to certify the election of a trustee because the electing creditors did not attempt to determine the extent of the debtor's liabilities. The court held that the creditors were obligated to investigate in order to conduct a trustee election because the debtor had not filed its schedules and the United States Trustee recommended that the election not be certified because "there was no showing of the composition of the creditor body." *Id.* at 187. Here, Poage has filed her schedules and the United States Trustee has not taken a position on the election. Poage has stated that she may need to schedule additional creditors once she is able to examine James Poage's books and records. This court, however, has no basis to speculate that enough creditors will be found which will reduce Merrill Lynch's below the minimum percentage requirement especially since Merrill Lynch's claim currently exceeds 90 percent of the scheduled unsecured claims.

Cyrak's arguments that Merrill Lynch should not have been allowed to vote for a permanent trustee because its claim is disputed and unliquidated are more problematic. Although Rule 2003(b)(3) states that a claim may be temporarily allowed for voting purposes, it does not provide a procedure for ruling on objections. With respect to final allowance and distribution, a properly executed and filed proof of claim is prima facie evidence of the validity and amount of the claim. *Simmons v. Savell (In re Simmons),* 765 F.2d 547, 551–52 (5th Cir.1985); Bankr.R. 3001. An objection to a claim initiates a contested matter unless the objection is joined with a counterclaim which requests relief covered by Bankruptcy Rule 7001. *Simmons,* 765 F.2d at 552. The objecting party has the burden of producing evidence which rebuts the claim. *California State Board of Equalization v. Official Unsecured Creditors' Committee (In re Fidelity Holding Co., Ltd.),* 837 F.2d 696, 698 (5th Cir.1988). He must produce evidence that is "of probative force equal to that of the creditor's proof of claim." *Simmons,* 765 F.2d at 552. If such evidence is produced, the claimant must produce evidence which proves the claim by a preponderance. *Fidelity Holding,* 837 F.2d at 698. The claimant always carries the ultimate burden of proof. *Id.*

This process is not directly applicable to claims objections under § 702 and Rule 2003(a). Ordinarily, a § 341 meeting must be held within 40 days after the order for relief. Bankr.R. 2003(a). The purpose behind permitting provisional allowance of a claim for voting purposes is to expedite voting and obviate delay. Generally, objections to claims for the purpose of voting are to be decided promptly and determined summarily. *See In re Cohoes Industrial Terminal, Inc.,* 83 B.R. 256, 258 (S.D.N.Y. 1988). This expedited schedule may not permit the parties to conduct the preparation needed to satisfy the evidentiary burdens established by the Fifth Circuit. The court believes the following framework satisfies these needs.

■ As Rule 3001(f) provides, a properly executed and filed proof of claim is prima facie evidence of the validity and amount of the claim. Such a claim is entitled to vote unless an objection is presented. Bankr.R. 2003(b)(3). If an objection is raised, it is incumbent upon the objecting party to present facts from which the court can reasonably conclude that after a sufficient time for discovery the objecting party could present evidence of equal probative force to that of the creditor's claim. If the objecting party satisfies this burden the claim should be disallowed for voting purposes unless the claimant presents sufficient facts from which the court could reasonably conclude that after a reasonable time for discovery, the claimant could prove the validity and amount of his claim by a preponderance of the evidence. Because of the strong policy of creditor control behind Chapter 7, any doubts should be resolved in favor of the claimant. The court will apply this framework to Cyrak's objections.

■ Cyrak contends that Merrill Lynch's claim should be disallowed for voting purposes because (1) Poage did not receive any consideration from Merrill Lynch; (2) Merrill Lynch did not meet with Poage or require her to obtain separate counsel; and (3) Merrill Lynch may have colluded with James Poage. He concedes, however, that discovery will have to be taken before these objections can be proved. He has presented no facts from which this court can reasonably conclude that probative evidence could be presented to substantiate these objections. He has not presented any affidavits or other documentation and has not requested an evidentiary hearing. Just as important, these objections are not of the type that the court can make a preliminary ruling in favor of the interim trustee without a substantial evidentiary basis especially since Poage admits that she signed the promissory note in question. The court has not been provided with a sufficient factual basis to reject Merrill Lynch's claim for voting purposes based on these allegations.

■ Cyrak also contends that Merrill Lynch's claim is unliquidated because in its proof of claim, Merrill Lynch states that its proof of claim does not waive any rights it may have against other parties including James Poage. A debt is liquidated if the amount due and the date on which it was due are fixed or certain, or when they are ascertainable by reference to (1) an agreement or (2) a simple mathematical formula. *In re Potenza*, 75 B.R. 17, 19 (Bankr.D. Nev.1987). Generally, a debt based on a promissory note is liquidated because the amount due can be determined from the promissory note and supporting documentation. The fact that Merrill Lynch may have recourse against James Poage or other individuals does not make Poage's debt unliquidated since the promissory note provides that Poage is jointly and severally liable for full payment.

■ Cyrak contends that Merrill Lynch's vote should be disqualified because it may be an insider. Specifically, he contends that James Poage is an insider and that James Poage and Merrill Lynch may "have a close relationship which, upon further investigation, may prove to be conspiratorial and/or controlling." Section 101(30) defines the term "insider" only by way of example; it merely states that the term insider includes a number of relationships. 11 U.S.C. § 101(30). Section 102(3) states that the term "includes," which is used in § 101(30) to define an insider, is not limiting. Congress has instructed that an insider is " 'one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.' " *Castellani v. Kohne (In re Kucharek)*, 79 B.R. 393, 395 (Bankr.E.D.Wis.1987) (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1977), U.S. Code Cong. & Admin. News, 5787, 6269 (1978)). Thus, an insider may be a person or entity other than those set forth in § 101(30) if the particular relationship satisfies this standard.

■ "[T]he point of the insider definition [contained in § 702] is to invalidate the voting of a creditor who is so tied to or controlled by the Debtor as to in effect be an alter-ego of the Debtor." *In re Blesi*,

43 B.R. 45, 48 (D.Minn.1984). The issue whether a creditor is an insider is a question of fact that depends upon the circumstances of the particular case. Cyrak has presented no facts from which such a relationship can be inferred. He has presented no affidavits and have not requested an evidentiary hearing. Cyrak has not presented a sufficient factual basis for this court to reasonably conclude that Merrill Lynch should not have been allowed to vote because it is an insider.

Cyrak presents two reasons why he believes Merrill Lynch has an interest materially adverse to the other creditors. According to Cyrak, Merrill Lynch made a loan of approximately $1,800,000 to ATC. He contends that because ATC also owes Poage approximately $975,000 and that this debt could be the largest asset of the estate, an argument can be made that Merrill Lynch has an interest materially adverse to the other creditors. Cyrak also contends that Merrill Lynch may have a material adverse interest because it may have received preferential payments from Poage. In addition, Poage states that Merrill Lynch may have received a fraudulent transfer.

The Code does not define what is a materially adverse interest. Congress has instructed that "[i]t requires a balancing of various factors, such as the nature of the adverse interest, the size of the adverse interest, the degree to which it is adverse, and so on." The claim that Merrill Lynch has an adverse interest because ATC owes debts to Merrill Lynch and this bankruptcy estate is speculative at best. The facts as stated do not suggest that Merrill Lynch has a material adverse interest. Although circumstances could exist whereby it would be to Merrill Lynch's advantage to attempt to enhance its recovering from ATC to the detriment of its recoveries from this estate, no facts have been presented that such circumstances exist or that Merrill Lynch would have the ability to manipulate its positions.

Arguably, a creditor holds a materially adverse interest to the other creditors of the estate if he has received a preferential payment from the debtor. *See Waldschmidt v. Siva Truck Leasing, Inc. (In re Lange Cartage Corp.),* 20 B.R. 534, 537 (Bankr.E.D.Wis.1982). No facts have been presented which indicate that Merrill Lynch has received a preferential payment or fraudulent transfer from Poage. A mere suspicion of an avoidable transfer is insufficient to prohibit a creditor from voting for a trustee. *Id.* at 536. The court has not been presented a sufficient factual basis to deny confirmation of the election of Dan Stewart as permanent trustee.

## CONCLUSION

As with all legal problems, a court must step back and look at the controversy presented in light of the purposes behind the governing legal rules. The purpose behind the § 702 voting restrictions is to prevent the election of a trustee who will not protect the interests of all the creditors. *One Estate, Inc. v. Chase Manhattan Bank (In re Ira Haupt & Co.),* 379 F.2d 884, 892 (2d Cir.1967). "Paramount to consideration of a challenge to the election of a trustee is the welfare of the estate itself." *Kam Kuo Seafood,* 42 B.R. at 560. Because an individual may act as trustee if he is competent to serve as trustee and he maintains an office in the district in which the case is pending, the court must ensure that the creditors that vote are entitled to do so. Merrill Lynch voted for Daniel C. Stewart. Stewart is a panel trustee. By allowing Merrill Lynch's claim for voting purposes, the court has merely concluded that the objections raised are not sufficient to prohibit Merrill Lynch from voting for a permanent trustee. The purpose behind the § 702 voting restrictions has been fulfilled. The court has not concluded that an interested party could not raise a sufficient objection to Merrill Lynch's claim later in this case for purposes other than voting for a permanent trustee, including final allowance. Merrill Lynch's motion will be granted.

Upon the foregoing,

IT IS ORDERED that Merrill Lynch's motion to confirm the election of Daniel C.

Stewart as permanent trustee is GRANTED.