**In re EDDIE HAGGAR LIMITED, INC., Debtor.**

**Bankruptcy No. 395–30415 RCM–7.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Sept. 27, 1995.

R. Michael Farquhar, Winstead Sechrest & Minick, P.C, Dallas, Texas, for Dale McCullough, Interim Trustee.

Lawrence Chek, Jenkens & Gilchrist, Dallas, Texas, for Trim–Pak, Inc. and The Richards Group, Inc.

David Weitman, Hughes & Luce, L.L.P., Dallas, Texas, for Foothill Capital Corporation.

Marilyn Garner, Office of U.S. Trustee, Dallas, Texas, for U.S. Trustee.

## MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

Trim–Pak, Inc. and The Richards Group, Inc. (collectively hereinafter called "moving creditors") filed an emergency motion in the above proceeding to validate the election of a permanent trustee under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 2003. Foothill Capital Corporation ("Foothill") objected. To elect a trustee, creditors holding at least twenty percent (20%) in amount of the type of claims referred to in 11 U.S.C. § 702(a) must both request an election and actually vote. The creditors who requested the election in this case and who subsequently voted for a permanent trustee failed to hold the required minimum twenty percent. Accordingly, moving creditors' motion to validate the election of a permanent trustee is denied, and the interim trustee shall serve as the trustee in the case. § 702(d).

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This matter concerns the administration of the bankruptcy estate and is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A). The motion was heard on September 18, 1995, and was taken under advisement. Pursuant to Bankruptcy Rule 7052, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On January 24, 1995, Eddie Haggar Limited, Inc. ("Debtor") filed a voluntary petition for reorganization under Chapter 11. On February 6, 1995, the United States Trustee appointed the Official Unsecured Creditor's Committee ("Committee"). The court subsequently approved the Committee's retention of Jenkens & Gilchrist ("J & G") as its counsel. On August 7, 1995, the Debtor voluntarily converted its case to Chapter 7 liquidation. The next day, Dale McCullough was appointed interim Chapter 7 trustee for the estate.

Between July 26, 1995 and August 17, 1995, Tom Jackson, president of Trim–Pak, Inc. ("Trim–Pak"), solicited and received proxy statements from six unsecured creditors, including Trim–Pak. On September 6, 1995, Mr. Jackson filed and served upon the United States Trustee a Verified Statement of Proxies to be Voted as required under Bankr.R. 2006(e). The next day, the United States Trustee conducted an election for a permanent trustee. Trim–Pak nominated Daniel Sherman as trustee. Trim–Pak claimed its six proxies exceeded the twenty percent of claims eligible to vote, and the United States Trustee agreed. Trim–Pak and The Richards Group, Inc. ("Richards Group"), which was another creditor eligible to vote, elected Mr. Sherman as permanent trustee. No other votes were cast. Foothill, the primary secured creditor of the Debtor, was present at the meeting and objected to the election on two grounds. First, Foothill objected to the solicitation process. Second, Foothill objected to the method of computing the twenty percent requirement of claims

eligible to request an election and to vote in the trustee election.

In light of Foothill's objections, the United States Trustee refused to certify the election and gave the creditors ten days to seek resolution of the election dispute in court, or the interim trustee would become permanent. On September 11, 1995, Trim–Pak and the Richards Group filed a motion seeking emergency validation of the election. Foothill objected to the validation of the election and contended in part that: 1) the proxies used by Trim–Pak in the election were solicited improperly under Bankr.R. 2006; 2) the proxies were not in the form required under Bankr.R. 9010(c) and therefore were invalid; and 3) the proxies that requested the election and were voted represented less than twenty percent of eligible claims as required under § 702(b) and (c).

### CONCLUSIONS OF LAW

■ A bankruptcy estate is held in trust for the benefit of creditors. In Chapter 7 cases, the Bankruptcy Code preserves the right of creditors to select their own trustee. *In re Colorado Corp.*, 531 F.2d 463, 470 (10th Cir.1976); *In re Poage*, 92 B.R. 659, 662 (Bankr.N.D.Tex.1988); H.R. Doc. 137, 93d Cong., 1st Sess., Pt. I, at 123 (1973). The right to elect a trustee enables creditors to have confidence that the estate will be administered in the manner most beneficial to their interests. *In re Radford Enters., Inc.*, 31 B.R. 213, 215 (Bankr.N.D.Ohio 1983).

■ Voting restrictions in the Bankruptcy Code and Bankruptcy Rules are intended to prevent the election of a trustee who will not protect the interests of all creditors. *One Estate, Inc. v. Chase Manhattan Bank (In re Ira Haupt & Co.)*, 379 F.2d 884, 892 (2d Cir.1967); *In re New York Produce American & Korean Auction Corp.*, 106 B.R. 42, 47 (Bankr.S.D.N.Y.1989) *citing In re Poage*, 92 B.R. at 666. The trustee's primary duty is to the estate's unsecured creditors. *In re Poage*, 92 B.R. at 662.

### Improper Solicitation

■ Proxy solicitation is regulated by Bankr.R. 2006. There are two related pur-

poses for the solicitation regulations, First, the regulations ensure that creditors' control is not subverted through improper solicitation or granting of proxies. Bankr.R. 2006 advisory committee's note. Second, the regulations discourage the election of a trustee by creditor's attorneys. *In re Poage*, 92 B.R. at 663; *In re Oxborrow*, 104 B.R. 356, 362 (E.D.Wash.1989), *aff'd*, 913 F.2d 751 (9th Cir. 1990).

Solicitation is defined as any communication that directly or indirectly asks a creditor to give a proxy. Bankr.R. 2006(b)(2). There are two exceptions. First, a communication from an attorney to a regular client who has a claim is not a solicitation. *Id.* Second, a communication from an attorney to the owner of a claim who has requested the attorney to represent the owner is also not a solicitation. *Id.*

■ The Court has wide discretion in deciding how to handle proxy disputes. Bankr.R. 2006 advisory committee's note. Bankruptcy Rule 2006 was not intended to restrict the scope of the Court's discretion in determining proxy disputes. *Id.* The Court's paramount consideration is the welfare of the estate. *In re Poage*, 92 B.R. at 666. Some courts have held that the failure to entirely comply with all technical requirements of Bankr.R. 2006 will not invalidate the election of a Trustee. *In re Brent Industries, Inc.*, 96 B.R. 193, 197 (Bankr.N.D.Iowa 1989); *In re Metro Shippers, Inc.*, 63 B.R. 593, 599 (Bankr.E.D.Pa.1986); *In re Radford Enterprises, Inc.*, 31 B.R. at 215. In *Brent Industries*, the Court held that a court may overlook one or two violations of Bankr.R. 2006 in the spirit of creditor participation in Chapter 7 cases. 96 B.R. at 197. In *Metro Shippers*, the court held that purported defects in the solicitation of proxies may be only harmless error. 63 B.R. at 599. A stricter adherence to the technical requirements of solicitation and trustee election may be warranted where there is a finding of bad faith. *Id.*

### Solicitation by or on Behalf of an Attorney

■ Foothill contends that Mr. Jackson solicited proxies on behalf of J & G. Bankruptcy Rule 2006(d) expressly prohibits solic-

itation of proxies "by or on behalf of an attorney at law." There are two reasons for this prohibition. First, solicitation by or on behalf of an attorney is recognized as unethical conduct. Bankr.R. 2006 advisory committee's note, *citing In re Darland Company,* 184 F.Supp. 760, 763–64 (S.D.Iowa 1960). Second, attorney solicitation "... carries a substantial risk that administration will fall into the hands of those whose interest is in obtaining fees from the estate rather than securing dividends for creditors." Bankr.R. 2006(d) advisory committee's note.

The testimony and evidence presented at the hearing indicates that Mr. Jackson was soliciting proxies on behalf of Twin–Pak and other unsecured creditors. J & G's role was limited to representing and assisting Twin–Pak in their solicitation efforts. There was insufficient evidence to support Foothill's contention that Mr. Jackson was soliciting proxies on behalf of J & G. Therefore, Foothill's claim that Mr. Jackson solicited proxies on behalf of J & G is overruled.

### Solicitation by the Committee

■ Foothill also contends that Mr. Jackson violated Bankr.R. 2006(c)(1) by soliciting proxies on behalf of the Committee. The Committee was appointed pursuant to 11 U.S.C. § 1102(a). At the time of the trustee election at issue, the Committee was no longer effective because of the conversion to Chapter 7. Bankruptcy Rule 2006(c)(1) lists parties that are authorized to solicit proxies. Under subsection (c)(1)(A), a creditor with an allowable unsecured claim against the estate, on the date of the filing of the petition, is authorized to solicit proxies.

Foothill presented evidence that Mr. Jackson mentioned the Committee in his solicitation communications. The strongest evidence was a letter sent from Mr. Jackson to MSAS Custom Logistics ("MSAS") that stated that Mr. Jackson had "been asked to solicit votes on behalf of the Committee." MSAS was not a member of the Committee. Arguably, solicitation of this particular creditor, whose claim was in the amount of $155,-180.66, was improper. At the hearing, moving creditors informed the Court that they were withdrawing MSAS's from the pool of eligible claims to vote in the trustee election because MSAS was a priority claim. Be-

cause of this withdrawal, Foothill's objection to MSAS's proxy in the amount of $155,-180.66 is inapplicable.

Other evidence presented at the hearing indicated that the Committee discussed, while the case was in Chapter 11, the election of a permanent trustee if the case was converted to Chapter 7. These earlier discussions among committee members do not violate the Bankr.R. 2006(c)(2) requirement that solicitations be "only in writing" when a committee member thereafter gives his proxy to another committee member without further substantial discussion. Accordingly, the Court finds that Mr. Jackson's proxy solicitations of Kay Lynn Sportswear, Inc. ("Kay Lynn"), the Richards Group, and Twin Dragon Marketing "(Twin Dragon") were proper as authorized under Bankr.R. 2006(c)(1)(A).

### Oral Solicitations

■ In addition, Foothill contends that Mr. Jackson improperly solicited the Richards Group and Palmetto proxies through oral communications. Bankruptcy Rule 2006(c)(2) states that "[a] proxy may be solicited only in writing." While it can be argued that this "may" requirement is ambiguous, it appears that, under Rule 2006(c)(2), solicitations *must* be in writing.

Foothill presented evidence that the cover letter that was sent to Palmetto with the proxy form included a reference by Mr. Jackson asking Palmetto to "[p]lease sign [and] return as we discussed." Palmetto was not a member of the Chapter 11 Creditors Committee. As a result, Palmetto State Trans. Company, Inc. ("Palmetto") could not have been included in the pre-conversion Committee discussions. The Richards Group's standing was not subject to legitimate dispute.

At the hearing, moving creditors presented Mr. Jackson's stipulated statement that indicated that he had no oral discussions with any relevant creditors about procuring their proxies or electing a trustee, except for brief conversations with: 1) MSAS to inform them to look for a facsimile; and 2) Kay Lynn and the Richards Group to obtain a facsimile number to send a solicitation.

Mr. Jackson's claim that he had no other conversations contradicts the language of his

written cover letter. It appears that Mr. Jackson orally solicited Palmetto. The Court finds in favor of Foothill's objection to the proxy of Palmetto in the amount of $189,-351.64. Accordingly, the proxy and vote of Palmetto are rejected.

### Inadequate Proxy Form

■ Foothill argues that all proxies solicited by Mr. Jackson fail to meet the requirements under Bankr.R. 2006 and are therefore invalid. Specifically, Foothill contends that the original proxies: 1) do not contain the address of Trim–Pak as the proxy receiver; and 2) are not acknowledged or notarized. Foothill claims these two defects render all the proxies invalid. Foothill failed to complain of the proxy deficiencies at the trustee election meeting.

Moving creditors contend that the proxies do substantially conform and that any inadvertent deficiency did not affect the substantial rights of any party. In an effort to cure the deficiencies, moving creditors presented the Court with amended proxy statements from each creditor. The amended proxies correct the problems of which Foothill complained.

Bankruptcy Rule 2006(b)(1) defines a proxy as "a written power of attorney authorizing any entity to vote the claim." A power of attorney must *substantially conform* to ·the appropriate Official Form and be acknowledged. Bankr.R. 9010(c) (emphasis added).

Considering the totality of the circumstances, the Court overrules Foothill's objection to the form of the proxies. First, it could be argued that Foothill waived any objection to the proxy content because it failed to object at the election meeting. Second, even if Foothill did not waive its right to object, the proxy defects are harmless error. The proxies substantially complied with the requirements. In addition, any question concerning their authenticity was affirmatively answered by the amended proxies. The errors did not effect the substantial rights of· any party and as such, were harmless.[1]

### Proxies Represented Less Than Twenty Percent of Claims Eligible to Vote

■ Finally, Foothill contends that the election of a permanent trustee is invalid because the creditors who requested the vote and subsequently voted did not hold at least twenty percent in amount of the type of claim required. An election of a permanent Chapter 7 trustee will be conducted upon the request of creditors whose claims represent at least twenty percent in amount of the claims eligible to vote in the election. § 702(b); *see Berg v. Esposito (In re Oxborrow)*, 913 F.2d at 754. The type of claim eligible to vote is mandated by § 702(a). To have a valid election, creditors whose claims represent at least the twenty percent minimum amount must also vote. § 702(c)(1). It takes a majority of those creditors who vote to elect a permanent trustee. § 702(c)(2).

Mr. Jackson reported that the maximum claims eligible to vote amounted to $6,297,-536.12. Mr. Jackson also reported that $1,487,576.57 of the eligible claims voted for Mr. Sherman as permanent trustee. As a result, Mr. Jackson reported that 23.6 percent of the eligible claims requested the permanent trustee election and voted.

The Court finds the reported figure for the maximum amount of claims eligible to vote is inaccurate. On May 30, 1995, The Hartwell Company ("Hartwell") filed a liquidated proof of claim for $1,697,946.36. An objection to Hartwell's claim has not been filed. The Hartwell claim includes a note by Debtor to the ˋHartwell Company on which the unpaid principal and interest totaled $1,635,-000. It is recognized that Exhibit 4A to Debtor's Statement of Affairs (part of moving creditor's Exhibit 29 herein) mentions that Debtor has a pending lawsuit against Hartwell and that Hartwell's claim is a counterclaim. However, under Bankr.R. 3001(f), Hartwell's unobjected to proof of claim constitutes *prima facie* evidence of its validity. *In re Poage*, 92 B.R. at 665. Therefore, the amount of the Hartwell claim must be included in the maximum amount of claims eligible to vote. When Hartwell's claim is counted, regardless of whether all the votes cast are

---

1. The Court is aware that *In re Phillips* held proxies invalid where the form failed to include an address and acknowledgment. 24 B.R. 715, 717–18 (E.D.Cal.1982). In *In re Phillips*, the complaining party failed to raise waiver or harmless error. As such, *In re Phillips* is distinguished from the present case.

valid, twenty percent of the creditors did not request or vote in the election as required under § 702(b) and (c).

The addition of the Hartwell claim amount increases the maximum amount of claims eligible to vote to $7,995,482.46. As previously discussed, the Palmetto proxy is invalid. Since the Palmetto claim amount was $189,351.64, the total amount of eligible claims voted is reduced to $1,298,224.93. Therefore, only 16.2 percent of the maximum eligible claims requested the election and voted.[2] As a result, the permanent trustee election is invalid.[3]

2. Even if the Palmetto claim amount was eligible to vote, only 18.6 percent of maximum eligible claims would have requested the trustee election and voted.

3. A major issue was presented concerning the appropriate determination of eligible claims by which the Court is to measure whether the twenty percent requirement has been met, *i.e.*, whether eligible creditors are computed on those who file proofs of claim or the total amount of scheduled unsecured claims. The Court need not reach a decision on that issue. The Court does not find that there is a conflict between § 702 and Bankruptcy Rule 2003(b)(3). The Court finds persuasive the holding in *In re Lake States Commodities, Inc.*, 173 B.R. 642, 646 (Bankr. N.D.Ill.1994) (agreeing with the lines of cases that look to proofs of claims on file as of the date of the election to determine the base of eligible claims) *but cf. In re Lindell Drop Forge Co.*, 111 B.R. 137, 145 (Bankr.W.D.Mich.1990) (rejecting the use of proofs of claims filed to initially determine the eligible creditors who may request a § 702(a) election); *In re DB Drilling, Inc.*, 73 B.R. 953, 955 (Bankr.N.D.Tex.1987) (using the total amount of scheduled unsecured claims to determine the twenty percent requirement); *In re Tartan Constr. Co.*, 4 B.R. 655, 657 (Bankr. D.Neb.1980) (stating that all creditors, not just those who have filed proofs of claim, are to be counted in determining the twenty percent requirement).