**In re BATON ROUGE MARINE REPAIR & DRYDOCK, INC., Debtor.**

**Bankruptcy No. 84–00200.**

United States Bankruptcy Court,
M.D. Louisiana.

July 19, 1985.

John C. Anderson and Henry A. Barham, III, Baton Rouge, La., for Pilgrim Bulk Terminal, Inc. and Baton Rouge Bulk Terminal, Inc.

Durward McLaughlin, Baton Rouge, La., for Baton Rouge Marine Enterprises, William Clay, Ellis Ducreport, William Craig, and C.Z. Braud, Baton Rouge, La.

David S. Rubin, Baton Rouge, La. for Debtor.

Charles N. Malone, Baton Rouge, La. Trustee.

WESLEY W. STEEN, Bankruptcy Judge.

### I. Jurisdiction of the Court

This is a proceeding arising under Title 11 U.S.C. The United States District Court for the Middle District of Louisiana has original jurisdiction pursuant to 28 U.S.C. § 1334(b). By Local Rule 29, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157.

This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A); pursuant to 28 U.S.C. § 157(b)(1), the Bankruptcy Judge for this district may hear and determine all core proceedings arising in a case under Title 11 referred under 28 U.S.C. § 157(a), and the Bankruptcy Judge may enter appropriate orders and judgments.

No party has objected to the exercise of jurisdiction by the Bankruptcy Judge. No party has filed a motion for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) or pursuant to 11 U.S.C. § 305. No party filed a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2). No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereun-

der, and the District Court has not done so on its own motion.

## II. Facts

The Debtor filed this voluntary Chapter 11 case on March 22, 1984. Pilgrim Bulk Terminal, Inc. (hereinafter "Pilgrim") is a creditor whose claim is $490,000.00. On June 21, 1984, Pilgrim moved to appoint a Chapter 11 trustee; at the hearing on the motion, Pilgrim proposed the appointment of Charles N. Malone, a member of the panel of Trustees of this Court for Chapter 7 cases. Without objection, Mr. Malone was appointed Chapter 11 trustee. On April 12, 1985, the case was converted to a case under Chapter 7 on Pilgrim's motion; Mr. Malone was appointed interim trustee. At the § 341(a) meeting on May 10, 1985, Pilgrim requested an election for the office of permanent trustee and voted for Mr. Philip Peck. Mr. Peck is not a member of the standing Chapter 7 trustee panel. Pilgrim purported to vote both its own claim and that of the law firm of Eastham, Watson, Dale & Forney (hereinafter "Eastman"). Eastman is a creditor whose claim is $4,961.23. No other party requested an election of a permanent trustee and no other votes were cast.

The corporate structures and association of the Debtor and Pilgrim are as follows:

Pilgrim asserts that the claims of Potential Electors[1] are as follows:

| George Engine Company | $ 4,523.39 |
|---|---|
| Capitol Steel Company | 4,631.01 |
| Eastham | 4,961.23 |
| Pilgrim | 490,000.00 |
| **TOTAL** | **$504,118.63** |

There is no dispute that these claimants are Potential Electors. However, there is at least one other such creditor; Mrs. Josephine Spedale has filed an $11,000 unsecured claim (claim # 17). There has been no objection to the claim; no party has asserted that this claim does not meet the requirements of § 702(a)(1). Therefore, the § 702(a)(1) claims are those set forth

above plus $11,000; the total amount of the § 702(a)(1) claims is thus $515,118.63.[2]

As noted at the § 341(a) meeting in this case, there were only two participants requesting an election and voting: Pilgrim and Eastham. For reasons discussed below, the election was not properly requested, there were insufficient votes to elect a permanent trustee, and, therefore, Mr. Peck is not elected. Mr. Malone will be the permanent trustee.

## III. Conclusions of Law

### A. How a Permanent Trustee is Elected

Section 702 of the Bankruptcy Code determines the appointment of the permanent

---

1. The terms "Potential Electors" and "Qualified Electors" are created in this opinion to attempt to translate into English the statutory language found in § 702. "Potential Electors" is intended to mean those creditors with claims defined in § 702(a)(1). "Qualified Electors" are "Potential Electors" who are not disenfranchised by § 702(a)(2) or (3).

2. Actually, Ms. Sepdale has filed several claims. Only this one, however, qualifies her as a Potential Elector.

trustee. The statutory scheme first requires the identification of the creditors and claims that are allowable, undisputed, fixed, liquidated, and unsecured; these creditors can be referred to as Potential Electors. Insiders and claimants with an adverse interest are then eliminated. The remaining creditors are Qualified Electors; these creditors are entitled to request an election and are entitled to vote the amount of their claims. An election is held only if it is requested by Qualified Electors holding claims equal to 20% or more of the total claims of all Qualified Electors. If an election is properly requested, it is conducted at the § 341(a) meeting; the candidate who is appointed permanent trustee is the one who receives a majority of the votes cast by Qualified Electors, providing that at least 20% of the eligible claims are in fact voted. Voting is done by the amount of the claim, not by heads.

### B. Pilgrim is not a Qualified Elector

This decision turns on the conclusion that Pilgrim is not a Qualified Elector because it is an insider. Once that claim is excluded, the result is mathematical.

■ Under § 101(2)(B), the term "affiliate" includes a 100% subsidiary of the debtor. Therefore, Baton Rouge Marine Bulk Terminal, Inc. is an affiliate of the Debtor. Baton Rouge Marine Bulk Terminal, Inc. and Pilgrim Bulk Terminal, Inc. are each 50% general partners of the general partnership known as Baton Rouge Bulk Terminal Associates. Section 101(28)(B)(v) defines the term "insider" to include a general partner of a corporate debtor. Of course, Baton Rouge Marine Bulk Terminal, Inc. is not the debtor. However, § 101(28)(E) provides that the

term "insider" includes an "insider of an affiliate as if such affiliate were the debtor." This opinion has already concluded that Baton Rouge Marine Bulk Terminal is an affiliate of the Debtor; if Baton Rouge Marine Bulk Terminal were the debtor, then Pilgrim would be an insider; therefore, Pilgrim is an insider of an affiliate (considered as the Debtor). Section 101(28)(E) provides that an insider of an affiliate is an insider of the debtor. Section 702(a)(3) provides that insiders are not Qualified Electors.

Counsel for Pilgrim argues that this literal interpretation of the statutory scheme overlooks the Congressional objective to brand as "insiders" only those who have some affinity with a debtor or some propensity to ally with the debtor to the detriment of other parties in interest. Counsel argues that when there is demonstrated "bad blood" between the debtor and a party that is statutorily classified as an insider, the Court should recognize the Congressional objective (perceived by counsel) to brand as insiders only those with tainted motives and to exclude from that taint those whose interests diverge from the Debtor's.

Counsel's argument cannot prevail. The definition of "insider" is a mechanical test, with no statutory hint of authority to apply a discretionary exclusion related to complicity between the debtor and the party potentially to be classed as an insider. The Court cannot ignore an explicit statutory test to apply a vague expression of Congressional intent.[3]

### C. Computation of Requirements for an Election

The claims of Qualified Electors are then computed as follows:

---

**3.** Because of the conclusion reached in this opinion, the Court will not consider the allegations of other interested parties who participated in these proceedings. Those allegations are essentially that Pilgrim intended to install a puppet trustee when it nominated Mr. Malone; the allegation would continue that Pilgrim attempted to change the holder of that office when the Trustee exercised independent analysis and authority. There would appear no need under the present circumstances to consider

those allegations; if those allegations were considered, the Court would need to determine not only whether there was a "bad blood" exception to the insider test, but also perhaps whether there is an "improper motives" exception to the "bad blood" exception to the insider test. The expansion of issues for consideration demonstrates the wisdom of staying within the bounds of the statute itself when possible rather than straying to ambiguous legislative history.

| | |
|---|---|
| Potential Electors' claims (Total § 701(a)(1) claims) | $515,118.63 |
| Excluded Claims (Claims held by creditors that may *not* vote under § 704(a)) | 490,000.00 |
| Qualified Electors' claims (Claims held by creditors that *may* vote under § 704(a)) | $ 25,118.63 |
| **20% of such claims** | $ 5,023.73 |

The only creditor eligible to vote under § 702(a) who requested an election was Eastham; that claim amounted to $4,961.23. Obviously, the 20% requirement to call a trustee election was not met. If an election was not properly called, obviously a trustee was not elected. Additionally, even if an election was somehow properly held, the statute provides that a permanent trustee was not elected unless at least 20% of the claims of Qualified Electors are voted: § 702(c); this requirement was not met.

### D. Appointment of a Permanent Trustee

Section 702(d) provides that if a trustee is not elected under an election properly called, the interim trustee shall become the permanent trustee. An order to effect that result will today be separately entered.