**In re Matthew Marshall APPLIN and Carolyn Applin, Debtors.**

**No. 289–02592–C–7.**
**Motion No. SPS–1.**

United States Bankruptcy Court,
E.D. California.

Nov. 21, 1989.

David E. Pinch, Polk, Scheer & Prober, San Rafael, Cal., for San Francisco Federal Sav. and Loan Ass'n.

Weldon Ray Reeves, Sacramento, Cal., for debtors.

## MEMORANDUM DECISION ON MOTION FOR RECONSIDERATION

CHRISTOPHER M. KLEIN,
Bankruptcy Judge:

This motion for reconsideration was filed seeking to have the court revisit the evidence and, in the alternative, in an attempt to cure a defective record. The evidentiary issues recur in routine bankruptcy automatic stay motion practice: (1) admissions; and (2) the admissibility of real estate appraisals under the Federal Rules of Evidence.[1] The matter illustrates the importance in bankruptcy motion practice of making a record with competent, admissible evidence that is adequate to support the relief that is being requested. Under the circumstances of this case, the motion will be denied.

Craftsmanship in making a record is particularly important when a party is requesting special findings and special relief in what otherwise would be a routine matter. The record on motions is normally made in this court at the first instance by way of affidavits or depositions filed in advance of the hearing pursuant to Federal Rule of Civil Procedure 43(e). This permits the court to identify and dispose of the routine "contested matter" motions that are not genuinely disputed, of which it receives about 2,400 per year, so that it can focus its attention, and the finite amount of time available for hearings, upon actual points of dispute.

The challenge inherent in the sheer volume of these routine, fact-based motions that must be decided while remaining faithful to dictates of due process makes it essential that counsel do their part by making evidentiary records in support of the relief that they seek.

San Francisco Federal Savings and Loan Association ("San Francisco Federal") needed unusual and particularized findings that placed it on a tightrope in this contested matter in which it sought relief from the

---

1. The Federal Rules of Evidence apply in bankruptcy courts. Fed.R.Evid. 101 and 1101(a).

automatic stay. Although seeking relief based upon lack of equity in the collateral, it wanted to prove that the collateral was worth more than the $51,415.86 that it was owed in order, as an oversecured creditor, to claim attorney's fees pursuant to 11 U.S.C. § 506(b). Since lack of equity was its basis for relief from the stay, it also needed to prove that the collateral was worth not very much more than the $53,422.92 total of all secured claims against the collateral lest the existence of equity preclude relief from the automatic stay.

San Francisco Federal did not make a competent evidentiary record that put the necessary fine point on its proof of value. Instead, it left itself with a record in which the only competent evidence of value that was admissible under the Federal Rules of Evidence showed that the collateral was worth only $50,950.00, thereby leaving San Francisco Federal as an *undersecured* creditor that was entitled to relief from the automatic stay but that was ineligible for fees under section 506(b). Accordingly, attorney's fees were denied when relief from the automatic stay was granted.

Now, seeking post-judgment relief under Rules 59 and 60,[2] San Francisco Federal attempts to cure the defective record with new evidence of value and with a contention that there was a conclusive judicial admission that there was equity in the collateral so that it can resuscitate its request for fees.

## FINDINGS OF FACT

The debtors own a residential rental property in Richmond, California. On their schedules, executed under penalty of perjury, they stated their opinion that the property was worth $50,950.00. They did not claim an exemption for any equity in the rental property.

**2.** Rules 59 and 60, Federal Rules of Civil Procedure, are made applicable to all bankruptcy matters by Bankruptcy Rules 9023 and 9024. The order resolving a contested matter, such as a motion for relief from the automatic stay, is a judgment. Fed.R.Civ.P. 58; Bankr.R. 9021.

**3.** San Francisco Federal stated its basis for relief as follows:

On June 20, 1989, there was filed the Report Of Trustee In No–Asset Case in which the chapter 7 trustee reported that, after diligent inquiry into the property of the estate, she had located no assets that could be administered for the benefit of creditors.

San Francisco Federal had a deed of trust against the property and, on July 17, 1989, moved for relief from the automatic stay on a theory of lack of equity.[3] The evidence proffered in support of the motion consisted of the declaration of a custodian of records of San Francisco Federal, to which declaration was attached a copy of the note and deed of trust. The declaration asserts that the total claim as of July 5, 1989, was $51,415.86, exclusive of attorney's fees. Neither the declaration nor the exhibits attached to it address the value of the property.

Counsel for the debtors filed an opposition in which it was stated: "As the Debtor's [sic] schedules indicate, there is substantial equity in the property and the security interest of the moving party is in no way impaired." The schedules were to the contrary. There was no further support or explanation for this statement. Nor was evidence proffered. The trustee had reported her finding of no assets.

The court made findings of fact that the value of the property was $50,950.00 (as opined in the schedules), and that San Francisco Federal's claim exceeded that sum. Relief from stay was granted based upon the conclusion that neither the debtors nor the estate had an equity in the property and that, it being a chapter 7 liquidation case, the property was not necessary to an effective reorganization. Attorney's fees and costs were denied on the basis that San

Movant seeks relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d)(2), and alleges that in accordance with the information set forth in the attached Declaration of PAULETTA H. ORNELLAS, there is insufficient equity present in the subject property to justify the continuance of the Automatic Stay. Motion For Relief From Automatic Stay, Motion No. SPS–1, No. 289–02592–C–7 (Bankr.E.D.Cal.).

Francisco Federal was an undersecured creditor.

In support of the Motion To Reconsider Order Granting Motion For Relief, there was filed a declaration by an appraiser who opined that the property was worth $68,000.00.

In further support of reconsideration, it was urged that the court should have taken judicial notice of the motion papers filed on behalf of Beneficial of California ("Beneficial"), a creditor holding a second deed of trust supporting a claim of $2,007.06 (plus interest and other charges). Although those papers included a declaration of a custodian of records for Beneficial attaching the copy of the appraisal in its files, there was no declaration by the appraiser regarding the appraisal or the appraiser's qualifications as an expert.

## CONCLUSIONS OF LAW

■ The party moving for relief from the automatic stay on a theory of lack of equity in the property must make out a prima facie case by way of competent evidence as to the essential elements required for relief, including the value of the property and the claims against it. The Bankruptcy Code spells out the moving party's burden: "the party requesting such relief has the burden of proof on the issue of the debtor's equity in property." 11 U.S.C. § 362(g)(1).

■ The requisite proof is established by way of presenting competent evidence to establish a record. Such evidence must be admissible under the Federal Rules of Evidence because those rules expressly apply in bankruptcy courts. Fed.R.Evid. 101 and 1101(a).

■ Evidence on routine motions for relief from stay in this court is generally taken on affidavits as permitted by Federal Rule of Civil Procedure 43(e) unless it appears that live testimony would be of assistance to the trier of fact.[4] Local Rule 3.

This enables the court to winnow the genuine disputes of fact and law from the 2,500 "contested matters" under Bankruptcy Rule 9014 that annually appear on its calendar.[5]

The fact of accepting affidavits does not relax the fundamental mandates of due process and does not excuse compliance with the requirement that evidence be admissible pursuant to the Federal Rules of Evidence. Thus, the hearsay rule, and its exceptions, remain applicable. Fed.R.Evid. 802–804. Hearsay within hearsay is inadmissible unless each layer conforms with a hearsay exception. Fed.R.Evid. 805.

■ In addition to affidavits, this court often takes judicial notice of the schedules filed in the case when the value of property is in issue. The debtors' schedules are a key document in a bankruptcy case and are executed by debtors under penalty of perjury. Representations by a debtor in the schedules as to such matters as the value of property, when offered against a debtor, are eligible for treatment as admissions by a party-opponent. Fed.R.Evid. 801(d)(2).

■ Judicial notice of basic filings in the bankruptcy case is permissible to fill in gaps in the evidentiary record of a specific adversary proceeding or contested matter. *In re E.R. Fegert, Inc.*, 887 F.2d 955 (9th Cir.1989).

In this instance, San Francisco Federal made a motion for relief from stay predicated upon lack of equity in the property and provided evidence of the amount of its claim. No evidence, however, was provided that was probative of the value of the property. Thus, evidence was missing as to the essential element of value.

There was, however, relevant evidence located in the schedules filed in the bankruptcy case. Specifically, the debtors swore under penalty of perjury in their schedules that the property in question was

---

**4.** Federal Rule of Civil Procedure 43 is made applicable in all bankruptcy matters by Bankruptcy Rule 9017.

**5.** "Contested matters" are essentially items that call for the court to determine questions of law

and fact that are of a sufficiently straightforward nature as to enable their resolution on a "short cause" basis without offending requirements of due process.

worth $50,950.00. This statement qualified for use as an admission by a party-opponent under Federal Rule of Evidence 801(d)(2) as it was (a) intended by the debtor declarant as an assertion, (b) relevant to the question of value, and (c) being used against the party declarant. This statement was evidence on the face of the record that was available to fill in the evidentiary gap.

The court was faced with a choice. It could deny the motion for relief from the stay based upon failure of proof, or it could, as a matter of discretion, fill in the evidentiary gap by taking judicial notice of the evidence of the schedules in which the debtors agreed under oath that they lacked equity in the property. It did the latter.

In this motion for reconsideration, San Francisco Federal says that the court should have put a finer point on the findings that filled in the gap. It points to what it sees as a conclusive admission by debtors' attorney and to an affidavit that was filed by a different party in support of a different motion. Neither, however, constitutes admissible evidence.

### 1. *Statement By Attorney As Judicial Admission.*

First, San Francisco Federal contends that the court should have taken as an admission the opposition filed by debtor's counsel in which it was contended: "As the Debtor's schedules indicate, there is substantial equity in the property[,] and the security interest of the moving party is no way impaired." Opposition To Motion To Relief From Stay at 2. The argument is that this putative admission by the debtors'

attorney is conclusive of the question of the value of the property.[6]

In order to be given conclusive effect, the putative admission would have to be deemed a judicial admission. Judicial admissions commonly arise by way of stipulations, pleadings, statements in pretrial orders, and responses to requests for admissions. Some degree of formality is entailed. The court has discretion to accept or reject the judicial admission. Judicial admissions are usually made by counsel. 9 J Wigmore, *Evidence* §§ 2588–94 (Chadbourne rev. 1961).[7]

The statement that San Francisco Federal contends constitutes a judicial admission fails to qualify for the conclusive effect that is claimed for two reasons. First, the statement is so internally contradictory that it deserves to be taken as no more than argument. Although the statement says that the debtors' schedules indicate that there is substantial equity in the property, the schedules are directly to the contrary. Thus, the statement is no more than an argumentative assertion of a defense in a paper that, taken in its context, has the tenor of merely announcing that the debtors intended to put the moving party to its proof. It was the equivalent of an inconsistent plea.

Judicial admissions are not made upon ambiguous, "assuming arguendo" comments by counsel and are not made upon inconsistent pleas. *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 842–43 (D.C.Cir.1981); *Continental Insurance Co. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir.1971); *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 24 (4th Cir.

---

6. "In that the Debtors opposed Lender's motion on the grounds that there was 'substantial equity' in the property, the court's finding that there is no equity in the property seems to be in error in light of the Debtors' admission." Motion To Reconsider Order Granting Motion For Relief And Memorandum Of Points Authorities at 2–3.

7. Strictly speaking, judicial admissions are distinguishable from pleadings because: (1) they typically are made after the pleadings are closed and counteract or diminish pleadings; (2) they are not part of the required statements defining issues; and (3) they are not subject to rules of

time, form, and amendment that apply to pleadings. 9 J. Wigmore, *Evidence* § 2589 (Chadbourne rev. 1961). Nevertheless, lawyers and judges under modern rules of procedure tend to use the term "judicial admission" to encompass such technically distinct items as pleadings, statements in pretrial orders, and responses to requests for admission in addition to formal stipulations. *See, e.g.,* Mansfield, *Lawyers' Admissions,* 12 Litigation, Fall 1985, at 39, 40. The salient point is that judicially admitted matters are so far beyond dispute that evidence is not required.

1963), *cert. denied,* 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964), *cited with approval, Arizona v. Shamrock Foods Co.,* 729 F.2d 1208, 1215 (9th Cir.1984). Thus, the ambiguous putative admission in this case is a doubtful candidate for putting the issue of equity in the property beyond the realm of evidence.[8]

Even if counsel's statement were not a doubtful candidate for treatment as a judicial admission, the court is not compelled to accept it merely at the instance of a party. Instead, the court has discretion to reject such treatment. Indeed, the conclusive effect of a judicial admission, the policies underlying modern liberal rules of pleading, and the alternative of allowing an attorney's admission to be used as *evidence* under Federal Rule of Evidence 801 are all factors that coalesce to warrant a reluctance to base the imposition of a judicial admission on an inadvertent statement. It is, in the end, a matter of discretion for the court. In this instance, the court elects not to exercise its discretion to find a conclusive judicial admission.

### 2. *Statement by Attorney as Evidentiary Admission.*

■ An inadvertent statement by counsel is more likely to be treated as an evidentiary admission than a judicial admission. Evidentiary admissions, unlike judicial admissions, are mere evidence, are not conclusive, and may be contradicted by other evidence.

■ A statement by one's attorney is frequently an admission by a party-opponent under Federal Rule of Evidence 801(d)(2). It is likely to be a statement by a person authorized by the party to make a statement concerning the subject. Fed.R. Evid. 801(d)(2)(C). And it is likely to be a statement by the party's agent concerning a matter within the scope of the agency made during the existence of the relationship. Fed.R.Evid. 801(d)(2)(D); 4 J. Wein-

stein & M. Berger, *Weinstein's Evidence,* ¶ 801(d)(2) (1988); B. Russell, *Bankruptcy Evidence Manual,* § 801.22 (1987).

In this instance, the debtors' attorney wrote "As the Debtor's schedules indicate, there is substantial equity in the property and the security interest of the moving party is in no way impaired." Such a statement is a natural candidate for introduction into evidence as an admission by a party-opponent. Trustworthiness, however, remains a factor.

The fact that the debtors' schedules, which they executed under penalty of perjury, show that there is no equity in the property, casts doubt upon the trustworthiness of counsel's assertion. It is not sufficiently trustworthy to prompt the court to allow it to be introduced into evidence. Even if it were introduced, the court would ascribe so little weight to it that it could not form the basis for now affording relief to San Francisco Federal.

### 3. *Consideration of Evidence from Another Motion.*

■ San Francisco Federal also asks the court to consider, as evidence on reconsideration, an appraisal that was an exhibit to a declaration in support of a different motion for relief from stay by a different creditor ("Beneficial"), who held a deed of trust inferior to that of San Francisco Federal. Beneficial had obtained the deed of trust in 1985 in connection with a loan of $5,600.00, the principal balance on which was $2,007.06 as of the date of bankruptcy. The appraiser, who is not an employee of Beneficial, opines that the property in question is worth $68,000.00, a value that would leave both creditors oversecured. This raises several problems.

Not the least of those problems is the lack of a formal request by San Francisco Federal that the court consider evidence proffered by Beneficial in support of Beneficial's separate motion. It was not part of

---

**8.** Judicial admissions can arise in bankruptcy motion litigation. For example, requests for admission can be made in contested matters because Federal Rule of Civil Procedure 36 applies in bankruptcy contested matters.

Bankr.R. 7036 and 9014. Any matter admitted pursuant to a request for admission is conclusively established unless the court permits withdrawal or amendment of the admission. Fed.R. Civ.P. 36(b).

the record on San Francisco Federal's motion.

### 4. *Business Records Under Federal Rules of Evidence.*

■ Even if San Francisco Federal had offered Beneficial's records, the appraisal would not have been considered, because it is not an admissible business record under Federal Rule of Evidence 803(6). A determination on the admissibility of such proffered evidence is a matter of discretion with the trial court. *Waddell v. Comm'r of Internal Revenue,* 841 F.2d 264, 267 (9th Cir.1988).

■ An admissible business record must satisfy three basic requirements: (1) it must be "kept in the course of a regularly conducted business activity"; (2) it must be "the regular practice of that business activity" to make the record; and (3) the "source of information or the method or circumstances of preparation" must not indicate lack of trustworthiness. Fed.R. Evid. 803(6); *Waddell,* 841 F.2d at 267.

Beneficial presented the declaration of a person claiming to be its custodian of records, to which were attached as exhibits: (1) a note evidencing a $5,600.00 loan made May 31, 1985; (2) a form deed of trust executed May 31, 1985; and (3) an appraisal giving an opinion of value as of February 7, 1989. This disparity in dates is important.

The declaration by Beneficial's custodian does not establish the regularity of obtaining an appraisal of real property some four years after the making of a $5,600.00 loan.[9] It does not appear that it is the regular practice of a regularly conducted business activity to obtain a real property appraisal nearly four years after making a small loan and at a time when only $2,007.06 of principal remains to be repaid. Nor is the appraisal regular on its face.[10]

■ Moreover, the circumstances of preparation of the appraisal suggest lack of trustworthiness. The logical inference to be drawn from the proximity of the dates of appraisal and of filing this bankruptcy case, and of the remoteness of the dates of loan and of appraisal, is that the appraisal was commissioned with a view toward litigation. Appraisals that are obtained for the purpose of litigation and upon which independent business decisions are not routinely made are generally not sufficiently trustworthy to qualify for the business records exception to the hearsay rule.[11]

---

9. The pertinent portion of the declaration (which the court finds confusing and ambiguous) is as follows:

> I have reviewed the loan service records of BENEFICIAL CALIFORNIA, INC. before making these statements. The loan service records are kept within the normal course of business by BENEFICIAL CALIFORNIA, INC., at or near the time of the event which is noted or memorialized. As to any statements re: equity or lack of equity contained within this Declaration, which are made upon information and belief, these statements are made after examination of the loan file and after consideration of the following factors: 1) the loan to value ratio; 2) existence of senior liens; 3) amount of arrearages; and, 4) original appraisals done at inception of loan.

Declaration of Lewis Jepson at 4. The original appraisals done at the inception of the loan are not included.

10. The exhibit is incomplete in material respects. The two pages that were attached by Beneficial's custodian as the appraisal turn out to have been but part of a nine-page appraisal, which was proffered in support of San Francisco Federal's motion for reconsideration. Moreover, a material portion of the first page of the appraisal (including the opinion as to value) was masked by a large paper tag that was not removed before the original was copied.

11. The court assumes, without deciding, that an appraisal in a lender's files could qualify as a business record under Federal Rule of Evidence 803(6). The rule expressly permits an opinion, upon proper showings of regularity and of trustworthiness, to be admitted. The obstacle in this instance is one of trustworthiness.

In the Ninth Circuit, an appraisal report prepared for, and relied upon by, an insurer in settling a claim has been admissible. *United States v. Licavoli,* 604 F.2d 613 (9th Cir.1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). Such an appraisal derives indicia of trustworthiness from the insurer's economic incentive to view skeptically claims and to pay no more than necessary.

An appraisal supporting a loan application often will be less trustworthy than one supporting an insurance claim because the lender profits from making loans. Although the value of any security supporting the loan is important,

This leads to the issue of layered hearsay. Hearsay within hearsay is not admissible unless each part of the combined statement conforms with a hearsay exception. Fed.R.Evid. 805. There is nothing to establish the expertise of the appraiser or the fact of his opinion—at a minimum, an affidavit from the appraiser would have been necessary. Fed.R.Evid. 702.

There is some tension between Rules 702 and 803(6) regarding the foundation that is needed to support an opinion. *See United States v. Licavoli,* 604 F.2d at 622–23; 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(6)[06], at 803–203 (1988). Some opinions contained in records of regularly conducted business activity have, by their nature, sufficient circumstantial guarantees of trustworthiness as not to need an express foundation pursuant to Rule 702. The rule was adopted primarily with a view towards making admissible medical records containing diagnostic opinions. 4 J. Weinstein & M. Berger, at 803–197—202.

Real estate appraisals generally lack the circumstantial guarantees of trustworthiness that are inherent in medical records containing diagnostic opinions. Their quality is uneven.[12] They are used for quite different purposes. A great deal depends upon the identity of the individual appraiser and the purposes for which the appraisal was made. Thus, in the circumstances of this case, an appropriate foundation was required for presenting a real estate appraisal to support a motion for relief from the automatic stay.

No other hearsay exception is suggested or suggests itself. In the absence of a hearsay exception, a written appraisal is admissible as evidence on a motion only if the opinion as to value expressed therein is supported by the affidavit or deposition testimony of the appraiser laying a proper evidentiary foundation for the appraiser's expertise. Fed.R.Civ.P. 43(e); Fed.R.Evid. 702; *Waddell,* 841 F.2d at 267. As there was no such affidavit or deposition testimony, the appraisal that was proffered in support of Beneficial's motion for relief from stay was not admissible and was not treated by the court as competent evidence in support of Beneficial's motion or in support of San Francisco Federal's motion.

5. *Standards Applicable to Reconsideration.*

In support of the motion for reconsideration, San Francisco Federal now proffers the full nine pages of the appraisal, in lieu of the two-page extract that Beneficial's custodian included, and supports the appraisal by the affidavit of the appraiser. The difficulty is that the standard for affording relief has changed. This is no longer a motion for relief from automatic stay. Instead, it is a motion to alter or amend a judgment or for relief from judgment or order. Fed.R.Civ.P. 59(e) and 60(b).

Since the motion was filed within ten days after the court's order was entered on the docket, it is treated in the first instance as a motion governed by Rule 59. The applicable issue under that rule focus-

such other factors as creditworthiness enter into the lender's calculus. The differences are particularly marked in this instance because Beneficial was making a small loan at a premium rate of interest that implies that greater risk was being assumed as to the actual value of the security.

**12.** *See generally,* Federal Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRRE"), Title XI (Real Estate Appraisal Reform Amendments), Pub.L. No. 101–73, 103 Stat. 511 (mandating establishment of Appraisal Subcommittee of Federal Financial Institutions Examination Council).

A purpose of those amendments was to promote some assurance that real estate appraisals

utilized in connection with federal programs be performed under uniform standards by individuals whose competency has been demonstrated and whose professional conduct is subject to supervision. H.Rep. No. 101–54(I), 101 Cong., 1st Sess. 311, 478, 484 (1989), U.S.Code Cong. & Admin.News 1989, p. 86.

The lack of circumstantial guarantees of trustworthiness of real estate appraisals in the lending industry has been underscored by the Congress: "congressional investigations have concluded that abusive appraisal practices include equally members of all professional appraisal groups, as well as those not belonging to any such groups." *Id.* at 484, U.S.Code Cong. & Admin.News 1989, p. 280.

es upon newly discovered evidence. In order for the court to exercise its discretion to afford such relief, it would have to be persuaded that there was due diligence in preparing and presenting the evidence. *Contempo Metal Furniture Co. v. East Texas Motor Freight Lines, Inc.,* 661 F.2d 761, 766 (9th Cir.1981); *Moylan v. Siciliano,* 292 F.2d 704, 705 (9th Cir.1961); 6A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 59.08[3]. The court is not so persuaded.[13]

Treating San Francisco Federal's motion as a request for relief under Rule 60(b), the only arguable basis for relief under that rule appears to be mistake, inadvertence, surprise, or excusable neglect. Fed.R. Civ.P. 60(b)(1). Under the facts of this case, there was not sufficient mistake, inadvertence, surprise, or excusable neglect to warrant relief. The same lawyer represented both Beneficial and San Francisco Federal in this relief from stay litigation and certainly knew about Beneficial's appraisal. And Beneficial's appraisal was not proffered to the court by counsel in a manner that would enable the appraisal to be admitted into evidence—it was incomplete and lacked a foundation.

There is no adequate basis for revisiting San Francisco Federal's motion for relief from the automatic stay in order to give it an opportunity to make a better evidentiary record so that it might become entitled to recover attorney's fees and costs under 11 U.S.C. § 506(b). There was full and fair opportunity to make a competent evidentiary record.[14]

\*     \*     \*

In a routinized arena, such as bankruptcy motion practice, one easily loses sight of some of such basics as the need to make out a prima facie case by competent evidence. Bankruptcy litigation is no different than any other federal litigation practice in this respect. Although such evidentiary questions as the use of appraisals arise more frequently in bankruptcy courts than elsewhere because the issue of value of property is pervasive in bankruptcy, that does not excuse compliance with the Federal Rules of Evidence.

An appropriate order denying the motion will issue.

---

**13.** The same conclusion pertains when the motion is treated as a motion to reopen for additional proof.

**14.** This court generally is hospitable to, and even encourages, requests for reconsideration where there are appropriate grounds, because the volume of decisions that it must make on routine "contested matter" motions entails an opportunity for overlooking a material aspect of any particular motion. That liberality, however, should not be misconstrued as licensing inadequate evidence on a theory that the record can easily be supplemented.