**In the Matter of LINDELL DROP FORGE COMPANY, Debtor.**

**Bankruptcy No. G89–04254.**

United States Bankruptcy Court,
W.D. Michigan.

Feb. 21, 1990.

Michael B. Nicholson, Detroit, Mich., for Intern. Union, UAW, and UAW Local 724 ("UAW").

Sheryl L. Toby, Detroit, Mich., for Brenco, Inc. ("Brenco").

Donald B. Lawrence, Jr., Lansing, Mich., for Jack Rachman ("Interim Trustee").

Ellen Ritteman, Office of the U.S. Trustee ("UST").

SUPPLEMENTAL
MEMORANDUM OPINION

JAMES D. GREGG, Bankruptcy Judge.

This contested matter raises the issue of whether certain creditors validly elected a Chapter 7 trustee under the Bankruptcy Code and applicable Bankruptcy Rules. On February 6, 1990, a hearing took place regarding the Motion of International Union, UAW, UAW Local 724 and Brenco, Incorporated for Resolution of Dispute Regarding Election of Trustee.

At the hearing, the attorneys for the parties stipulated to certain facts. It was stipulated that: (1) the meeting of creditors, pursuant to 11 U.S.C. § 341 ("§ 341 meeting"), as evidenced by a transcript, occurred on January 12, 1990; (2) the UAW's Proof of Multiple Claims for Employees and Retirees was filed on January 12, 1990 at 11:04 a.m.; (3) no issue exists regarding the timeliness of the filing of the UAW claim; (4) Brenco's Proof of Claim was filed on January 12, 1990 at 9:20 a.m.; (5) no issue exists regarding the timeliness of the filing of Brenco's claim; (6) Attorney Nicholson is an employee of the UAW International Union, as well as an attorney who is licensed to practice law in the State of Michigan; (7) although Attorney Nicholson attempted to vote the Pension Benefit Guaranty Corporation ("PBGC") asserted claim at the § 341 meeting, the PBGC had not filed a proof of claim at, or before the meeting; and (8) the attempted PBGC vote would not be counted, or addressed by the court, for the purpose of resolving the disputed election.

The hearing regarding the heavily contested motion concluded late during the evening on February 6, 1990, in Lansing, Michigan. The court, because of the importance of the issues raised and the necessity for a prompt resolution, stated its bench opinion almost immediately following the close of final arguments. The court now recognizes that certain portions of its bench opinion may be somewhat difficult to understand given the complexities of the legal issues and due to the lateness of the

day when the opinion was rendered. Therefore, the court has determined, in the interests of clarity and justice, to render this Supplemental Opinion.

The following shall constitute the court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052. The court hereby adopts its previous bench opinion by reference and hereby modifies or augments that opinion by this Supplemental Opinion.

On November 16, 1989, an Involuntary Petition Under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330, was filed against Lindell Drop Forge Company ("Debtor"). On December 4, 1989, the Debtor consented to an Order for Relief Under Chapter 7 of the Bankruptcy Code. Thereafter, the UST designated Jack Rachman as the Interim Trustee. Notice was given to creditors and interested parties that the § 341 meeting would take place on January 12, 1990 at 10 a.m. Brenco and the UAW received notice of the meeting. The notice stated, *inter alia*, "[n]o assets at this time—do not file claim unless notified to do so."

At the § 341 meeting, the Interim Trustee registered parties in interest who appeared. Brenco and the UAW, through their respective attorneys, sought to elect Ken Kazerski, as the permanent trustee, pursuant to 11 U.S.C. § 702(a). Robert Lee, the UAW Unit Chairman of the Debtor; Clifford Kibiloski, a retiree from the Debtor; Jerry Lerma, Jr., an employee of the Debtor; and David McClelland, an officer of UAW Local 724, also appeared. Brenco attempted to vote an unsecured claim in the amount of $371,729.56; the UAW attempted to vote a claim in the total amount of $8,502,040.00.

The Interim Trustee, who presided at the § 341 meeting, objected to the qualifications of the UAW and Brenco to vote, relying upon 11 U.S.C. § 702(a)(1) and Bankruptcy Rules 2003 and 2006. After discussions and legal argument by counsel present, the Interim Trustee determined the disputed election would be reported to the court. After representatives of the Debtor testified regarding the Debtor's assets, liabilities and business affairs, the Interim Trustee closed the § 341 meeting.

On January 22, 1990, the UAW and Brenco filed their motion to seek a determination that Mr. Kazerski was properly elected as the Chapter 7 trustee. In the alternative, the UAW and Brenco request the § 341 meeting be reconvened so they may again be given an opportunity to elect a trustee. The Interim Trustee objects to the requested relief.

11 U.S.C. § 702 states:

(a) A creditor may vote for a candidate for trustee only if such creditor—

(1) holds an *allowable, undisputed, fixed, liquidated, unsecured claim* of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;

(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

(3) is not an insider.

(b) At the meeting of creditors held under section 341 of this title, *creditors may elect* one person to serve as trustee in the case if election of a trustee is requested *by creditors that may vote* under subsection (a) of this section, *and that hold at least 20 percent in amount of the claims* specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.

(c) A candidate for trustee is elected trustee if—

(1) creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and

(2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for a trustee.

(d) If a trustee is not elected under this section, then the interim trustee

shall serve as trustee in the case. (Emphasis supplied.)

Bankruptcy Rule 2003(b)(3) states in pertinent part:

(3) **Right to Vote.** In a chapter 7 liquidation case, *a creditor is entitled to vote* at a meeting if, at or before the meeting, the creditor has filed a proof of claim or a writing setting forth facts evidencing a right to vote pursuant to § 702(a) of the Code *unless* objection is made to the claim or *the proof of claim is insufficient on its face.* ... Notwithstanding objection to the amount or allowability of a claim for the purpose of voting, the court *may,* after such notice and hearing as it may direct, temporarily allow it for that purpose in an amount which seems proper to the court. (Emphasis supplied.)

Bankruptcy Rule 2003(d) states:

(d) **Report to the Court.** The presiding officer shall transmit to the court the name and address of any person elected trustee or entity elected a member of a creditors' committee. *If an election is disputed, the presiding officer shall promptly inform the court in writing* that a dispute exists. Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office. If no motion for the resolution of such election dispute is made to the court within 10 days after the date of the creditors' meeting, the interim trustee shall serve as trustee in the case. (Emphasis supplied.)

The court finds the Interim Trustee filed a written report on January 16, 1990 which informed the court of the disputed election. The court also finds that the UAW and Brenco filed their motion to resolve the contested election within ten days. The motion was timely made. This contested matter is therefore properly before the court for a determination of the issues presented.

■ Preliminarily, an issue exists whether the Interim Trustee has standing to object to the election of a chapter 7 trustee. This court agrees with the weight of authority and holds an interim trustee has the requisite standing. *In re Metro Shippers, Inc.,* 63 B.R. 593, 598 (Bankr.E.D.Pa.1986); *In re Poage,* 92 B.R. 659, 663 (Bankr.N.D. Tex.1988); *In the Matter of NNLC Corp.,* 96 B.R. 7, 9 (Bankr.D.Conn.1989); *In re New York Produce American & Korean Auction Corp.,* 106 B.R. 42, 45–47 (Bankr. S.D.N.Y.1989); cf. *In re Sandhurst Securities, Inc.,* 96 B.R. 451, 456–57 (Bankr.S.D. N.Y.1989) (unsuccessful trustee candidate has no standing to object); *contra, In the Matter of G.I.C. Governmental Securities, Inc.,* 56 B.R. 105, 108 (Bankr.M.D.Fla. 1985).

■ With regard to the Brenco claim in the amount of $371,729.56, the court finds Brenco holds an "allowable, undisputed, fixed, liquidated, unsecured claim of the kind entitled to distribution under section 726(a)(2)...." 11 U.S.C. § 702(a)(1). After reviewing Brenco's proof of claim, the court further finds the claim comports with Bankruptcy Rule 3001. Brenco's claim attaches necessary writings, i.e. a Judgment Order issued by the United States District Court for the Western District of Virginia. Bankruptcy Rule 3001(c). The court finds Brenco's proof of claim constitutes prima facie evidence of the validity and amount of its claim. Bankruptcy Rule 3001(f). Brenco is not an insider nor does it appear to have an interest materially adverse to the interest of creditors. 11 U.S.C. § 702(a)(2) and (3). Because Brenco's claim meets those requirements stated in 11 U.S.C. § 702(a), and Brenco's claim is not "insufficient on its face" under Bankruptcy Rules 2003(b)(3) and 3001, Brenco was qualified to vote for a trustee at the § 341 meeting. Its claim in the amount of $371,729.56 will be considered to resolve the contested election.

■ With regard to the UAW's Proof of Multiple Claims for Employees and Retirees, in the amount of $8,502,040, "plus additional unliquidated amount", the court finds the UAW does *not* hold an "allowable, undisputed, fixed, liquidated, unsecured claim of the kind entitled to distribution" under 11 U.S.C. § 726(a)(2), (3), or (4).

First, the UAW claim, on its face, is stated to be based on estimated amounts for vacation pay, employee insurance, unpaid medical bills, unpaid $.80 per hour payments, unpaid lifetime retiree insurance, and a $500,000.00 special payment. There is absolutely no indication whatsoever in the proof of claim regarding how the estimated amounts were calculated. A "claim" includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured". 11 U.S.C. § 101(4)(A). However, for a creditor to vote, it must hold a *liquidated* claim. 11 U.S.C. § 702(a)(1). "Liquidated" or "liquidated claim" is not defined in the Bankruptcy Code.

Black's Law Dictionary 839 (5th ed. 1979) defines a "liquidated claim" as:

Claim, amount of which has been agreed on by parties to action or is fixed by operation of law. *Tapp v. Tapp's Trustee*, 299 Ky. 345, 185 S.W.2d 534, 535; *United States Fidelity & Guaranty Co. v. American Bldg. Maintenance Co. of Los Angeles*, 7 Cal.App.2d 683, 46 P.2d 984, 988. A claim which can be determined with exactness from parties' agreement or by arithmetical process or application of definite rules of law. *Huo Chin Yin v. Amino Products Co.*, 141 Ohio St. 21, 46 N.E.2d 610, 614; *Petersen v. Graham*, 7 Wash.2d 464, 110 P.2d 149, 154. Claim for debt or damages is "liquidated" in character if amount thereof is fixed, has been agreed upon, or is capable of ascertainment by mathematical computation or operation of law. *Robinson v. Loyola Foundation, Inc.*, Fla. App. 236 So.2d 154, 157.

The case of *In re Poage*, 92 B.R. 659 (Bankr.N.D.Tex.1988) also involved a disputed election of a Chapter 7 trustee. In that case Judge Felsenthal stated, "[a] debt is liquidated if the amount due and the date

on which it was due are fixed or certain, or when they are ascertainable by reference to (1) an agreement or (2) a simple mathematical formula. *In re Potenza*, 75 B.R. 17, 19 (Bankr.D.Nev.1987)." *In re Poage*, 92 B.R. at 665.

In a chapter 13 case, construing 11 U.S.C. § 109(e), the Sixth Circuit Court of Appeals has also recognized that the Bankruptcy Code does not define "liquidated." To determine whether a claim is liquidated, a court should determine whether an agreement exists or whether the debt can be determined by a simple mathematical computation. *Comprehensive Accounting Corp. v. Pearson (In the Matter of Pearson)*, 773 F.2d 751, 754 (6th Cir.1985).

In this matter, the court concludes that the asserted estimated amounts claimed by the UAW are not sufficiently liquidated. The proof of claim filed by the UAW does not disclose any agreement or mathematical formula by which its asserted indebtedness may be readily calculated or ascertained. The court believes the Bankruptcy Code and Rules require that such information must be included in any proof of claim filed. 11 U.S.C. § 702(a); Bankruptcy Rule 3001; Official Forms 19, 20 and 21.[1]

Second, the proof of claim filed by the UAW is insufficient on its face. No writing was attached which discloses the basis of the UAW claims, e.g., a collective bargaining agreement, a list of the names and addresses of the union employees and retirees, the time periods during which the asserted claims arose, or other relevant written documentation. When a claim is based upon a writing, the original or duplicate writing *must* be attached, or, if the writing is lost or destroyed, an explanation must be supplied regarding the circumstances of the loss or destruction. Bankruptcy Rule 3001(c). The UAW did not comply with this requirement. Therefore, its claim is not entitled to be considered as

---

1. Official Form 21, "Proof of Multiple Claims for Wages, Salary or Commissions," contains paragraph 2 which states "[t]he debtor owes the claimants $____, computed as indicated in the appended statement." The claim asserted by the UAW was not computed, either in the body of the proof of claim or any attachment thereto. The proof of claim filed by the UAW does not substantially comply with the Official Form prescribed by the Judicial Conference of the United States. Bankruptcy Rule 9009.

prima facie evidentiary proof. Bankruptcy Rule 3001(f).

> For voting purposes, the mere filing of a Proof of Claim is *prima facie* evidence of the validity of that claim *unless it is invalid on its face*, or an objection is interposed. *In re Flexible Conveyer Co,* 156 F.Supp. 164 (N.D.Ohio 1957); *see also Sloan's Furriers, Inc. v. Bradley,* 146 F.2d 757 (6th Cir.1945); *In re Autocue Sales & Distributing Corp.,* 148 F.Supp. 685 (S.D.N.Y.1957). Therefore, *a claim should be allowed for voting purposes if it is in substantial compliance with the requirements of the Code and the Official Bankruptcy Forms;* if the name and address of the creditor and the amount of its claim are substantially as shown in the schedules; and there is no objection to the allowance of the claim. *In re Flexible Conveyer Co., supra.* (Emphasis added.)

*In re DB Drilling, Inc.,* 73 B.R. 953, 955 (Bankr.N.D.Tex.1987).

Third, although not raised by any party, the UAW claim was filed for the benefit of certain union employees and retirees. The claim may therefore constitute a class proof of claim. To the extent it does, the claim does not confirm the UAW's status to represent the union members and retirees. The claim also fails to adequately identify the union members and retirees. *Reid v. White Motor Corp.,* 886 F.2d 1462, 1470–72 (6th Cir.1989). Because such information was not provided in the proof of claim, nor demonstrated by any writing attached thereto, it would be extremely difficult, if not impossible, for the presiding officer at the § 341 meeting to have determined whether or not the UAW (instead of the individual employees and retirees) held an allowable liquidated claim for voting purposes.

■ The court has considered whether it should temporarily allow the UAW claim for voting purposes in an amount which seems proper. Bankruptcy Rule 2003(b)(3); *cf. In the Matter of A & J Elastic Mills, Inc.,* 34 B.R. 977, 980 (S.D.N.Y.1983) ("a provisional approach is intended to be just that, and in absence of a substantial show-ing of impropriety, a *facially valid claim* should be permitted to vote") (emphasis added.). There is no showing that the UAW has acted improperly. The court has reviewed the UAW claim to determine if the claim should be provisionally allowed in some amount. Given the lack of any meaningful documentation to support the asserted liability in the UAW claim, the court is unable, and therefore declines, to determine a proper amount for voting purposes. Bankruptcy Rule 2003(b)(3).

. The court acknowledges a policy which favors a creditors' democracy in Chapter 7 cases. The Bankruptcy Code recognizes and grants rights to the creditors to elect a Chapter 7 trustee. However, as is the case in general elections for national, state or local political candidates, an otherwise eligible voter must properly register in advance of the election. In effect, 11 U.S.C. § 702 and Bankruptcy Rule 2003(b)(3) mandate certain registration requirements before an otherwise eligible creditor may vote for a Chapter 7 trustee. Because the UAW failed to properly register, its' vote cannot be considered.

Based upon the court's conclusions above, the UAW did not hold an allowable liquidated prima facie claim at the § 341 meeting. Its asserted claim, in the amount of $8,502,040.00, will not be considered to resolve the contested election.

■ The UAW argues, that because the § 341 meeting notice stated, "[n]o assets at this time—do not file claim unless notified to do so", it was denied due process. It is uncontested that the UAW received actual notice of the bankruptcy filing and of the time and date for the § 341 meeting. The UAW filed a claim, albeit a defective one, and had the opportunity to appear and seek to elect a trustee. The court concludes the UAW was not denied due process.

■ Brenco and the UAW seek alternative relief, viz. that the court order the § 341 meeting to be reconvened and permit creditors to again file claims and vote. A bankruptcy court, within the exercise of its equitable powers, has the authority to reopen a § 341 meeting to permit a

**144**

creditor to vote; the court is "not precluded from considering a variety of factors which would affect the expedient and orderly administration of the Debtor's affairs." *In the Matter of Mission Carpet Mills, Inc.,* 10 B.R. 494, 496 (B.A.P. 9th Cir.1981). In its discretion, the court declines to grant such relief.

The Interim Trustee has appeared at various contested matters and is in the process of administering the assets of the estate. An election dispute may effectively halt or delay the administration of an estate during its pendency. *In re Sandhurst Securities, Inc.,* 96 B.R. at 457. The court does not now believe it is in the best interests of creditors to reconvene the § 341 meeting and conduct yet another election. No fraud, collusion, adverse interest, creditor misconduct, or other relevant reason has been advanced to reconvene the § 341 meeting and hold another election or to obtain other equitable relief.

■ This court agrees it is "highly undesirable and unworkable to turn every trustee election into a full-scale trial". *In the Matter of Tartan Const. Co.,* 4 B.R. 655, 658 (Bankr.D.Neb.1980). Only when the circumstances warrant should a court order that a § 341 meeting be reconvened to allow another election to take place. Such circumstances must be demonstrated by the moving party under the Bankruptcy Code and Bankruptcy Rules and must be based on more than the party's desire to achieve a different election result.

■ Conducting an election for a permanent trustee under 11 U.S.C. § 702 is a two-step process. First, an election will be held only if it is requested by creditors who qualify and who hold 20% in amount of claims that are entitled to vote. 11 U.S.C. § 702(b); *In re Poage,* 92 B.R. at 663; *In re DB Drilling, Inc.,* 73 B.R. at 955; *In the Matter of Tartan Const. Co.,* 4 B.R. at 656–59. Second, if the election is properly requested, the trustee is elected if he or she receives a majority of the votes cast, by the amount of the claims, provided that at least 20% of the eligible claims are actually voted. 11 U.S.C. § 702(c)(1) and (2); *In re Poage,* 92 B.R. 663–64. Therefore,

unless 20% of the eligible claims first request an election, there is no reason to count the votes and determine if a trustee has been elected.

■ How should it be determined whether the minimum percentage requirement has been met with regard to the request for an election? Stated differently, how should a court determine the base amount of eligible claims, or the "universe of claims," for 11 U.S.C. § 702(b) purposes? After a careful review of reported cases, it appears there may be a difference of opinion as to how the universe of claims is determined.

The court in *In re Baton Rouge Marine Repair & Drydock, Inc.,* 57 B.R. 19, 23 (Bankr.M.D.La.1985) utilizes the following formula: Start with the total of § 702(a)(1) claims ("Potential Electors' claims"); subtract claims held by creditors that may *not* vote under § 702(a)(2) and (3) ("Excluded Claims"); the remainder or difference determines the claims which *may* vote under § 702(a) ("Qualified Electors' claims"); multiply the remainder by .2 to calculate the minimum percentage requirement to request an election.

Initially, the court listed the five "Potential Electors" by names and claim amounts which aggregated $515,118.63. *Baton Rouge Marine Repair,* 57 B.R. at 21. It is unclear whether the five Potential Electors, constituting the universe of claims, were determined by proofs of claim filed or by the schedules filed by the debtor.

The court in *Tartan* also utilizes a "manageable" formula as follows: Start with scheduled secured claims; subtract the scheduled value of secured property; the remainder or difference is the unsecured portion of the secured claims; add the scheduled nonpriority unsecured claims; the sum is the total unsecured claims as determined from the schedules; multiply this sum by .2 to determine the claims necessary to meet the minimum percentage requirement to request an election. *In the Matter of Tartan Const. Co.,* 4 B.R. 659.

In the event the *Baton Rouge* formula contemplates that the universe of claims under § 702(a) to initially be determined by proofs of claim filed, rather than claims scheduled, this court rejects that approach. The court believes that a debtor's schedules should be first utilized to determine holders of unsecured claims who may request an election under § 702(a). This court is persuaded by the analysis of the statute and legislative history contained in *Tartan.*

As Section 702 passed through the legislative process without major change or comment, this portion of the House Report provides the major source of guidance to legislative intent. *The report clearly indicates that all creditors, rather than only creditors who have filed proofs of claim, are to be counted.* First, the House explicitly wished to limit election of trustees to cases in which there was genuine interest shown by all creditors. *Second, the reference in the report to "scheduled" claims implies an assumption that all creditors are to be counted.* (Emphasis supplied and footnote omitted.)

*In the Matter of Tartan Const. Co.,* 4 B.R. at 658.

Other courts, while not explicitly stating any formulas, have implicitly recognized that the universe of claims for § 702(a) purposes should be first determined by relying upon a debtor's schedules. *In re Poage,* 92 B.R. at 664 (court declined to speculate regarding possible existence of additional claims because the claim voted exceeded 90% of the *scheduled* unsecured claims); *In re DB Drilling, Inc.,* 73 B.R. at 955 (the court noted that unsecured claims *scheduled* by debtor were $2,550,040.34; "20% of unsecured claims equal $510,-008.06"); *cf. In the Matter of Blanchard Management Corp.,* 10 B.R. 186, 187–88 (Bankr.S.D.N.Y.1981) (because no *schedules* were filed, it was not possible to determine whether the claim voted by creditor met 20% requisite majority of creditors to request election); *In re National Sugar Refining Co.,* 39 B.R. 578 (Bankr.S.D.N.Y. 1984) (although not addressed by the court, the attached report of election dispute appears to indicate that *total unsecured debt* was considered rather than the aggregate amount of proofs of claim filed).

In a case addressing whom may be a chapter 13 debtor under 11 U.S.C. § 109(e), the Sixth Circuit has also stated it is appropriate for a bankruptcy court to "rely primarily upon the debtor's schedules checking only to see if the schedules were made in good faith...." *In re Pearson,* 773 F.2d at 756. In chapter 13 cases, it is imperative that a prompt determination be made whether a debtor is eligible for chapter 13 relief. It is therefore appropriate to rely upon a debtor's good faith schedules. Likewise, in cases involving an election of a chapter 7 trustee, given the possibility of delay in effective administration of a case when a disputed election takes place, this court believes it is also appropriate to rely upon a debtor's good faith schedules to determine the universe of claims.

In this case, the court takes judicial notice that the Debtor filed its schedules on January 11, 1990. FRE 201(b)(2), (c) and (f). "Judicial notice of basic filings in the bankruptcy case is permissible to fill in gaps in the evidentiary record of a specific adversary proceeding or contested matter. *In re E.R. Fegert, Inc.,* 887 F.2d 955 (9th Cir.1989)." *In re Applin,* 108 B.R. 253, 257 (Bankr.E.D.Cal.1989). The schedules were filed before the § 341 meeting took place. There has been no assertion that the Debtor's schedules lacked good faith. Schedule A–3, "Creditors Having Unsecured Claims Without Priority", discloses aggregate unsecured claims in the amount of $14,664,721.22.

As previously stated, this court declines to utilize the formula set forth in *Baton Rouge Marine Repair,* 57 B.R. at 23, because it is unclear whether the total § 702(a) claims are based upon proofs of claim filed or scheduled unsecured claims. The court believes the better approach is to initially rely upon the scheduled A–3 unsecured claims.

■■■ Also, this court declines to follow the formula set forth in *In the Matter of Tartan,* 4 B.R. at 659, because it re-

quires the estimation of an undersecured creditor's unsecured portion of its claim. In many instances, at an early stage in the case, it cannot be readily determined whether a secured creditor holds a fully secured, partially secured, or completely unsecured claim. 11 U.S.C. § 506(a). A creditor who alleges it holds a secured claim may not be entitled to vote for a chapter 7 trustee. *In the Matter of NNLC Corp.*, 96 B.R. at 11 (bank may not hold a "fixed" unsecured claim within the meaning of § 702(a)(1) because its proof of claim asserted security on all assets up to its entire claim amount); *cf. In re Phillips*, 24 B.R. 715, 718 (Bankr.E.D.Cal.1982) (a creditor who filed two proofs of claim, one as secured and one as unsecured, but claimed its entire debt as secured is not eligible to vote under § 702(a)(1)). This court recognizes a holder of a secured claim, whether oversecured or undersecured, may surrender or waive its security to hold an unsecured claim. *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 379, 108 S.Ct. 626, 634, 98 L.Ed.2d 740 (1988). Therefore, however, unlikely, if a secured creditor desires to participate in the election of a chapter 7 trustee, it may waive or limit the amount of the secured portion of its claim. Further, a priority creditor may also waive or limit its priority treatment under 11 U.S.C. § 507(a); such waiver or limitation may permit it to vote for a chapter 7 trustee.

■ In this case, the only creditor who validly requested an election take place was Brenco. Brenco's allowed liquidated prima facie claim is $371,729.56. Because no holder of a secured claim or a priority claim waived its secured or priority status, based upon the Debtor's schedules, the universe of claims for § 702(a)(1) purposes is $14,664,721.22.[2] Brenco's claim only totals approximately 2.5% of claims which may have been eligible to vote for the trustee. Because 20% of the creditors holding eligible unsecured claims failed to request an election be held, no election was validly

requested. Therefore, no election took place.

The Interim Trustee will serve as the permanent trustee in this chapter 7 case. 11 U.S.C. § 702(d). An order shall be entered accordingly.

---

**2.** In this case the court need not determine whether unsecured claims listed as disputed or as unliquidated should be subtracted from the total amount of unsecured claims listed on Schedule A–3; even if such claims were subtracted, the outcome would remain the same.